CIRO FALCO's (dependent's) CASE.

Suffolk.    January 17, 1927. — May 23, 1927.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & WAIT, JJ.

*Workmen's Compensation Act,* Injuries to which act applies. *Proximate Cause. Evidence,* Matter of conjecture, Presumptions and burden of proof.

On the evidence submitted to a single member of the Industrial Accident Board and to the board on review at the hearings of a claim by the widow of one employed for thirty-six years as a sheet metal worker doing a large amount of repairing of copper vessels or beakers for chemical laboratories, where it appeared that the immediate cause of the employee's death was primary carcinoma of the liver and the claimant contended that the cause of the carcinoma was copper poisoning and the single member of the board awarded compensation, it was *held,* that, when the evidence was given its full probative effect, it went no farther than to say that it was possible, or perhaps probable, that primary carcinoma could be caused by copper or metal poisoning, and left it a matter of conjecture whether the injury causing the employee's death was received in the course of and arose out of the employment; and that the claim must be dismissed.

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board awarding compensation to the widow of Ciro Falco for injuries, resulting in his death, received while in the employment of C. W. P. McNally.

In the Superior Court, the case was heard by *Cox,* J. Material facts and evidence appearing on the record are stated in the opinion. By order of the judge, a final decree was entered awarding compensation.

The insurer appealed.

*M. J. Mulkern*, for the insurer.

*H. S. Avery*, for the claimant.

BRALEY, J.   The deceased employee Ciro Falco was in the employment of C. W. P. McNally for thirty-six years as a sheet metal worker.   During this period, although he occasionally worked on roofs, his principal duties required him to perform work on brass, copper, tin, galvanized iron, and lead. The following facts as to the character of the work and its physical effects upon the employee warrantably could be found.   The subscriber, engaged in the sheet metal business, did a large amount of repairing copper vessels or "beakers" sent by chemical laboratories.   The beakers were used for mixing colors until the proper shade was produced, and the employee when making the repairs had to replace the solder which had been "eaten out of the corners," and sometimes the intense heat would burn holes in the bottom.   The beakers sometimes were dry, and at other times they were moist.   If dry, they had to be scraped beyond the point of a leak to get the solder to adhere.   If the beakers were moist, verdigris, a corrosive of copper, would appear on the inside which spread over Falco's hands.   The nature of the work and his contact with the copper had so affected his health, that he grew weak and sickened, and on May 28, 1925, the subscriber reported, that the employee was suffering from metal poisoning.   G. L. c. 152, § 19.   June 3, 1925, the employee filed a claim for compensation on which a hearing was held June 29, 1925.   But before its conclusion the employee was sent for an impartial examination, and on September 11, 1925, he died.   The claimant, his widow and alleged dependent, on October 2, 1925, filed a claim for compensation on the ground that her husband's death resulted from metal poisoning due to his occupation.   The question therefore before the commissioner and the Industrial Accident Board on review, which affirmed his findings and awarded compensation, was, whether the death of the employee resulted from a personal injury received in the course of, and arising out of his employment.

It was contended by the claimant, whose refusal to have

an autopsy performed raised no presumption against her, that the carcinoma of the liver which caused his death was superimposed upon a pigmented cirrhosis of the liver, due to copper poisoning contracted in the course of his employment. It appeared from the hospital records where Falco underwent a physical examination, that there was some pigmentation of the forehead. Dr. Mallory, a pathologist called by the claimant, who had made a study of copper poisoning due to the inhaling or ingestion of copper or its salts, testified, that primary carcinoma of the liver, which is a rare disease, generally is associated with cirrhosis of the liver. In answer to a hypothetical question which substantially covered the material facts of the clinical history of the case, the witness said that all he could say, was, "that there is a possibility that there is a relation between the exposure to copper which this man had and the cause of his death." He also was of opinion that pigment cirrhosis may exist in the absence of any pigmentation of the extremities. To a question by the commissioner he answered, that he believed "there is some connection but, whether it is a causal connection, or an aggravating connection," he was not ready to determine. Dr. Lynch, a physician called by the claimant, testified that he believed there probably is some connection between a primary carcinoma of the liver, and "a previously damaged liver." But "whether it is a causal connection or an aggravating connection" he was not prepared to say. Dr. Faillace, the employee's physician from May 16 to August 2, 1925, made a diagnosis, that the patient had cirrhosis of the liver which in his opinion was caused "by intoxication of some metal, copper or lead." But he could "not tell whether or not the man had copper poisoning." The impartial report of Dr. Phipps, who examined the employee June 30, 1925, under G. L. c. 152, § 9, and diagnosed the case as carcinoma of the liver, was of opinion that it was possible "that the cachexia (meaning a condition of general ill health) may at least in part be due to metallic poison." It was agreed by the parties that one Dr. O'Brien, who did not appear as a witness, had signed the death certificate which stated the cause of death as "Car-

cinoma of Stomach and Liver, Ascites." See G. L. c. 46, § 19. The results of radiograph examinations also were described which with other evidence tended to show the physical conditions of the stomach and liver. Dr. Brickley, the only medical expert called by the insurer, who examined the employee June 14, 1925, gave a full description of Falco's condition, including statements made by him descriptive of his general decline in health, and symptoms of disease. The witness "thought he had neoplasm in his liver, probably carcinoma, and he feels it is not related to his work." It was found by the commissioner, however, that, although the employee had cancer, the cancer was primary, and the claimant also had sustained the burden of proving that her husband had pigment cirrhosis of the liver caused by copper poisoning. If, however, the employee died of primary cancer, the question, whether cirrhosis was a secondary cause, became of no consequence.

The final and decisive inquiry therefore, was, whether copper poisoning of itself had caused primary cancer. It was a question of fact, and not a matter for speculative conjecture. *Sponatski's Case*, 220 Mass. 526. The claimant accordingly must rely on the evidence of her own witnesses, and of the impartial expert, also called by her, to which sufficient reference previously has been made. *Pigeon's Case*, 216 Mass. 51. But, when this evidence is given its full probative effect, none of these witnesses would go further than to say that it was possible, or perhaps probable, that primary cancer could be caused by copper or metal poisoning. The question was left in an atmosphere of such uncertainty and doubt that no causal connection between the employee's work and the disease which the commissioner found caused his death had been affirmatively shown. *Sponatski's Case*, supra. *Ginley's Case*, 244 Mass. 346.

*The decree is reversed and a decree*
*is to be entered for the insurer.*