COMMONWEALTH *vs.* INHABITANTS OF WILMINGTON.

An indictment against a town, on the Gen. Sts. *c.* 44, § 21, for the loss of the life of a
person for want of suitable rails on a highway which it was bound to keep in repair,
cannot be sustained by proof that, at a place where the highway ran by the side of a
pond and travellers were accustomed to water their horses, the person, who was trav-
elling on it with a horse and wagon, alighted and led the horse out of the highway
into the pond, to water it, when the horse started, and dragged him, holding the reins,
towards the centre of the pond until he was drowned; and that the town had provided
no railing or other barrier at this place, but had laid a line of stones in the pond from
five to thirty feet from the highway, to indicate to travellers how far they might venture
into the pond with safety, beyond which line he was dragged and drowned.

INDICTMENT on the Gen. Sts. *c.* 44, § 21, for the loss of the
life of Stephen Sargent on June 19, 1866, for want of suitable
rails on the west side of a highway which the defendants were
bound to keep in due repair.

At the trial in the superior court in Middlesex, before *Brig-
ham*, C. J., it appeared that the highway ran near a pond in Wil-
mington, called Silver Lake ; and that for several rods the pond
" borders the westerly line of the highway, and at times, when
high, covers some portion of the westerly half of it, and was not
fenced or inclosed," except that, many years before 1866, " the
town authorities placed within the pond a large number of stones,
(the line of stones being several rods in length,) varying from
five to thirty feet from the edge of the highway and pond, to in-
dicate to persons that it was not safe to go beyond this line, and
to permit travellers to water their horses safely, (and this had
been the practice for many years by the public,) and about two
years before June 19, 1866, the town authorities caused these
stones to be replaced further back from the edge of the pond,
they having been driven too near the shore, by the ice and water,
to permit persons to enter the pond to water their horses."

It further appeared that on June 19, 1866, Sargent, who re-
sided in New Hampshire, and was journeying thither, was driving
along the highway, with his wife, in a wagon drawn by one horse,
when, on arriving at a point about midway of the distance where
the highway bordered on the pond, he turned the horse towards
the pond, to water it ; that the wind was blowing freshly, and

waves were dashing against the line of stones, with a noise ; that the horse hesitated, and Sargent (retaining his hold of the reins) alighted, took it by the bits, led it into the pond, and scooped up water in his hand and held it to the horse's mouth ; and that the horse, as soon as it touched the water, dropped its head as if to drink, and then " started violently towards the centre of the pond, Sargent still holding the reins, until they both, with the wagon, went over the line indicated by the stones, and both were drowned."

Upon these facts, a verdict was found against the defendants, and the case reported for the revision of this court, the defendants contending that they were not liable thereon.

*T. H. Sweetser & W. S. Gardner,* for the defendants.

*A. R. Brown,* (*E. A. Alger* with him,) for the Commonwealth, cited *Howard v. North Bridgewater,* 16 Pick. 189 ; *Palmer* v. *Andover,* 2 Cush. 600 ; *Bigelow* v. *Rutland,* 4 Cush. 247 ; *Alger* v. *Lowell,* 3 Allen, 402 ; *Stevens* v. *Boxford,* 10 Allen, 25 ; *Burnham* v. *Boston,* Ib. 290 ; *Sweeney* v. *Old Colony & Newport Railroad Co.* Ib. 368 ; *Elliott* v. *Pray,* Ib. 378 ; *Stewart* v. *Harvard College,* 12 Allen, 58 ; *Gaynor* v. *Old Colony & Newport Railway Co.* 100 Mass. 208 ; *Cobb* v. *Standish,* 14 Maine, 198 ; *Clark* v. *Barrington,* 41 N. H. 44 ; *Tucker* v. *Henniker,* Ib. 317 ; *Winship* v. *Enfield,* 42 N. H. 197 ; *Allen* v. *Hancock,* 16 Verm. 230 ; *Corby* v. *Hill,* 4 C. B. (N. S.) 556 ; *Hounsell* v. *Smyth,* 7 C. B. (N. S.) 731.

WELLS, J. This indictment is found under the Gen. Sts. *c.* 44, § 21, upon the charge that the life of the plaintiff's intestate was lost by reason of a defect in, or "want of suitable rails on" the way upon which he was travelling. We find nothing in the case to sustain that proposition, except the fact that his life was lost in a manner and under circumstances which render it probable that a substantial railing might have prevented the casualty.

But the fact that an injury has been sustained, by reason of a certain condition of the highway, is not sufficient to establish that condition as a defect for which the town may be charged, either criminally or by civil action. *Howard* v. *North Bridgewater,* 16

Pick. 189. *Macomber* v. *Taunton*, 100 Mass. 255. Towns are not required by law to fence their highways; nor to provide barriers to prevent travellers from driving out of the limits, or unmanageable horses from escaping therefrom. Railings are required only where some steep bank or other dangerous object or place exists so near to the travelled road as to expose persons travelling thereon to injury through some of the mischances incident to such use of the road, or reasonably to be anticipated therefrom. *Sparhawk* v. *Salem*, 1 Allen, 30. *Adams* v. *Natick*, 13 Allen, 429. *Murphy* v. *Gloucester*, *ante*, 470.

No such object or place, rendering the highway unsafe for use for the purposes of a highway, was shown to exist. The fault complained of was rather that the town did not maintain, near the margin of the pond, but outside of the limits of the highway, suitable barriers for the protection of those who might avail themselves of the opportunity thus afforded them to go out of the limits of the highway for the purpose of watering their horses in the pond. But the statute does not thus extend the obligation nor the liability of towns. The safety and convenience, required to be secured for the public ways, relate only to their use as ways for the purposes of travel thereon. *Richards* v. *Enfield*, 13 Gray, 344. *Stickney* v. *Salem*, 3 Allen, 374. The question whether they are safe and convenient, or otherwise, must be determined with reference to that purpose and use. Facilities to be enjoyed outside of the limits of the way are not surrounded by the same securities which the statutes provide for the way itself.

The counsel for the prosecution appeals to the common law doctrine, which holds a party liable in damages to one who has been induced to enter upon a place of undisclosed danger, by invitation, express or implied, and thereby suffered injury. But even if the common law test of civil liability, as applied in the cases cited, were applicable here, it would not make the town chargeable upon these facts. There was no concealed danger. The character of the place was obvious. There was nothing to mislead or entrap the party; nothing to take him by surprise, except the extraordinary conduct of his horse. That may be said to be the real and only cause of the accident. Of that, the party himself must bear the consequences. *Verdict set aside.*