CATHERINE T. DONOVAN *vs.* PULLMAN COMPANY.

Middlesex.    March 23, 1910. — May 18, 1910.

Present: MORTON, HAMMOND, BRALEY, & SHELDON, JJ.

*Negligence,* Employer's liability.

In an action by a woman employed as a car cleaner by a corporation owning and maintaining passenger cars used by being attached to trains operated by railroad corporations, against her employer, for personal injuries sustained while the plaintiff was engaged in cleaning the interior of a car of the defendant standing in a railroad yard, the plaintiff was the only witness upon the question of the defendant's liability. It was assumed by this court that her testimony warranted a finding that when she entered the defendant's employ, one week before, it was understood and agreed that she should be warned when a coupling was to be made. The plaintiff testified that while she was working in the car "an awful crash came and threw" her, that things were overturned and "the car was moved four or five or perhaps ten feet." There was no further explanation of the accident. *Held,* that there was nothing to show that the accident was caused in making a coupling, or to show what caused the "crash" as the plaintiff described it, or to show that it happened under such circumstances as to entitle the plaintiff to a warning; so that there was no evidence for the jury of negligence on the part of the defendant.

Tort by a woman employed as a car cleaner by the Pullman Company, a corporation owning and maintaining passenger cars used by being attached to trains operated by railroad corporations, against her employer for personal injuries sustained while the plaintiff was engaged in cleaning the interior of a car of the defendant standing in a railroad yard in that part of Boston called Charlestown on December 18, 1907. Writ dated March 24, 1908.

In the Superior Court the case was tried before *Bell*, J. Upon the question of the defendant's liability the plaintiff was the only witness. She testified that at the time of the accident she had been working for the defendant exactly one week; that she had applied for her position to one Miss Oakley, whom she saw in the yard in one of the Pullman cars and to whom she had been directed to apply; that Miss Oakley hired her and agreed to pay her $1.25 a day. The plaintiff also testified that when she saw the cars moving back and forth she told Miss Oakley that she was nervous and that she thought it was dangerous and that she was undecided about taking the place; that Miss Oakley said, " There is danger in everything you do working, there is danger in your going to work, when you are working, why, you will be always notified if there is any danger, there is no danger in it "; and that on the strength of that she took the position. The plaintiff then was asked the question: " What had you observed which made you hesitate about taking the position because of its danger?" and answered, " Well, I noticed the cars; that is, the engine backed on to them, and I wondered if there was people working in them at the time and if there had been working wouldn't they get thrown or hurt." The plaintiff then testified that Miss Oakley said that when there was anything of that sort she would always be warned by the engineer or foreman or whomsoever had charge of the work in the cars; that she thereafter worked for some days; that there had been times when there was shifting and moving and taking on or off of cars; that on these occasions she had been warned, once by one Barber, who seemed to be in charge of the work and to assist Miss Oakley; that Miss Oakley had told her upon the first day that when she got out of work Barber would tell her what to do; that she had applied to him when she was through work; that he would go

through the cars and she noticed him give other women work to do; that she relied upon that warning.

She further testified that the accident happened between half past three and half past four; that at that season of the year it was dark; that at the time of the accident she had just finished wiping up the inside of a little private room in one of the defendant's cars and was about to go out; that there was a pail of water on the floor; that " an awful crash came and threw " her; that she grabbed the steam pipes in her effort to save herself; that the pail, and all the cuspidors that had been on settees, were overturned; that the car was moved four or five or perhaps ten feet; that the pail, which was made of galvanized iron and was a little higher than an ordinary wooden pail, was full of water; that the cuspidors "which had been on a settee-like affair," were thrown upon the floor all over the place; that she was in the doorway coming out and was thrown into a narrow entryway three or four feet; that everything rattled; that she did not " come to for a couple of minutes."

The witness was asked, " Have I asked you as to whether you had worked during that week you were employed by the company — I think you have testified to this — that you had been warned when couplings were to be made ? " and answered, " Yes, sir, you have." She was asked, " And will you tell the jury how this crash, as you call it, — this coupling, — whether or not the cars came together on other occasions, if they came with the same force that they did this time ? " and answered, " When they came together on other occasions they didn't come with near so much force, but at any time that they would come like that if you hadn't been sitting you would have got thrown."

At the close of the plaintiff's evidence the judge ordered a verdict for the defendant and reported the case for determination by this court. If the judge was right in directing a verdict for the defendant, judgment was to be entered upon the verdict. If upon the evidence the case should have been submitted to the jury, the parties agreed that judgment should be entered for the plaintiff in the sum of $400 without costs.

The case was submitted on briefs.

*J. J. O'Connor & G. R. Farnum,* for the plaintiff.

*B. N. Johnson & R. L. Dana,* for the defendant.

MORTON, J.   There was plainly evidence warranting a finding that the plaintiff was in the exercise of due care.   The only question is whether there was any evidence warranting a finding that the accident was due to the neglect of the defendant of any duty which it owed to the plaintiff.   We assume in the plaintiff's favor that there was evidence warranting a finding that when she entered the defendant's employment it was understood and agreed that she should be warned when a coupling was to be made, and that she did not therefore assume the risk of an accident occasioned thereby.   But there was nothing to show that the accident was caused in making a coupling, or to show what caused the " crash " as the plaintiff described it, or that it happened under such circumstances as to entitle the plaintiff to a warning from the defendant.   The defendant could not justly be held liable for a failure to warn the plaintiff of a collision in respect to which it had itself no notice or warning and with which it had nothing to do.   It is possible, of course, that the collision was due to the defendant's own neglect.   But whether it was or not is entirely a matter of conjecture.

*Judgment on the verdict for the defendant.*