MARY A. MOORE, administratrix, *vs.* TOWN OF AMESBURY.

Essex. February 6, 7, 1929. — September 11, 1929.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & FIELD, JJ.

*Way*, Public: want of railing. *Evidence*, Matter of conjecture, Presumptions and burden of proof. *Proximate Cause*. *Practice, Civil*, Report.

A report by a judge of the Superior Court of an action of tort tried before him, after he has denied a motion by the defendant that a verdict be entered in his favor in accordance with leave reserved under G. L. c. 231, § 120, before the recording of a verdict for the plaintiff, properly presents to this court the question, whether the defendant's motion should have been granted.

At the trial in the Superior Court of an action by an administrator against a town for the penalty provided in G. L. c. 229, § 1, the evidence most favorable to the plaintiff was that the decedent's body was found at two o'clock on a Sunday afternoon at the foot of an embankment adjacent to a public way in the town, a rail along a sidewalk at the top of which had been broken for a considerable distance for over a year; that heavy grass on the embankment was crushed down as though "the body had rolled over and over down the bank"; that, when the body was found, the head was in a box; that there had been construction work on the way at that point for about two months and, while the way had been closed to vehicles, no barrier barred the use of the sidewalk which, however, was cluttered with lumps of dirt, rocks and pieces of asphalt; that the decedent for a month before his death had been back and forth every day over or near the portion of the public way under reconstruction, sometimes using a path running from near that point across private land to the vicinity of his home; that, when last seen, he had been sitting on private land near such path in the evening of the day before his body was found. No one was shown to have seen the accident. Upon a report by the trial judge, after a verdict for the plaintiff had been recorded with leave reserved under G. L. c. 231, § 120, and a motion by the defendant for a verdict in its favor thereafter had been denied, it was *held*, that on the record there was nothing to show that the plaintiff's intestate had become a traveller on the way before his death or to support the inference that there was a causal connection between his death and any failure of duty on the part of the defendant.

TORT under G. L. c. 229, § 1. Writ dated October 13, 1926.

In the Superior Court, the action was tried before *F.*

*T. Hammond,* J. Material evidence is described in the opinion. A verdict for the plaintiff in the sum of $1,000 was recorded after leave had been reserved under G. L. c. 231, § 120. A motion by the defendant that a verdict in its favor be entered in accordance with such leave was denied. The judge reported the action for determination by this court.

*L. J. Halloran,* for the plaintiff.

*F. L. Simpson,* (*A. W. Reddy* with him,) for the defendant.

RUGG, C.J. This is an action of tort to recover damages assessed by way of penalty under G. L. c. 229, § 1, for the death of the plaintiff's intestate alleged to have been caused while he was a traveller on a public way by a defect, or want of repair, or a lack of a sufficient railing on a.public way, and by failure properly to light the same. The evidence in its aspect most favorable to the plaintiff, so far as pertinent to the grounds of this decision, summarily stated, tended to show the following facts: The dead body of the plaintiff's intestate was found shortly before two o'clock on the afternoon of a Sunday in August, 1926, at the foot of an embankment, adjacent to a public way, ten or twelve feet in height with a slope about eighteen feet long. Heavy grass on the embankment was crushed down as though the body "had rolled over and over down the bank." There was testimony to the effect that when the body of the intestate was found the head was in a box and that his clothes "were damp underneath" and that there was a little dirt on his trousers; but there was no testimony as to where the box came from or how it reached that place. In a fence at the top of the embankment and along the sidewalk, there had been for over a year a break or place where the railing had disappeared for a considerable distance, which measured by one witness was found to be nineteen feet. The fence was in disrepair in other places. This break in the fence was on the portion of Main Street lying between the center of the town and East Greenwood Street, where the plaintiff's intestate had lived for several years. The public way in this immediate vicinity had been in process of reconstruction for about two months.

Among other implements in use was a steam shovel. From the break in the fence toward the center of Amesbury, the reconstruction work on the way extended a distance of less than one hundred feet, as measured by one witness found to be sixty-four feet. Where the reconstruction began, a barrier was placed across the way (which apparently was closed to vehicles), but there was no barrier across the sidewalk. Gravel and dirt were placed upon the sidewalk, which thus was partially covered. A narrow passageway of varying width next to the fence was open but cluttered with lumps of dirt and with rocks and pieces of asphalt. There were no lanterns or other lights near this break in the fence or along the sidewalk on the night preceding the Sunday when the body of the plaintiff's intestate was found. His death resulted from a fracture at the base of the skull, and one shoulder blade was broken.

The plaintiff's intestate was last seen according to the testimony at about half past ten in the evening of the preceding Saturday. He was then sitting with bowed head on the curbing of a walk leading to the side door of a private residence in the center of the town. It was "'possibly' three minutes walk from that point . . . to the spot where the body was found." There was a "good sized field" between this residence and the place where the reconstruction of the way began. It was a moonlight night. He left home on the afternoon of Saturday ostensibly to go to Derry, New Hampshire, but at various times during the evening he was seen in Amesbury by a number of witnesses, and there was no evidence that he went to Derry. "There was a path running through the field from the further end of Patten's Hollow to East Greenwood Street going from Amesbury Center to East Greenwood Street." The plaintiff's intestate used this path in the summer. Patten's Hollow appears to have been a name applied to a portion of Main Street lying somewhere between its junction with East Greenwood Street and the center of the town. For a month before his death the plaintiff's intestate had been back and forth every day over or near the portion of the public way under reconstruction. He was a heavy man, weighing two hundred pounds or more.

The case was submitted to the jury. A verdict was returned for the plaintiff, but before it was recorded leave was reserved with the consent of the jury to enter a verdict for the defendant if, upon exceptions taken or the questions of law reserved, it should be decided that a verdict for the defendant should have been entered. The defendant then filed a motion that verdict be entered for it on the leave reserved. To the denial of this motion the defendant excepted. The case was then reported for the determination of this court. The case thus is rightly before us. G. L. c. 231, §§ 111, 120. *Leland* v. *United Commercial Travelers of America*, 233 Mass. 558, 560, 561. *Brown* v. *Grow*, 249 Mass. 495, 499. *B. B. Noyes Co.* v. *Ballard*, 253 Mass. 340, 341.

The evidence must be considered in its aspect most favorable to the plaintiff. That has been stated. Whatever tends to contradict that, or support the contentions of the defendant on disputed facts, has been omitted.

The plaintiff rightly rests her case upon the argument that railing along the public way was insufficient or entirely wanting where one ought to have been. The absence of warning lights is not shown to have been a contributing cause to the death of the intestate. The evidence does not show whether the body of the intestate, in darkness or in the daylight, reached the place where it was found. There is nothing to indicate that he stumbled or tripped over any of the obstructions on the sidewalk. The intestate was perfectly familiar with the location and a warning light would not have conveyed to him any information not already possessed by him through his intimate acquaintance with the immediate locality. *Cody* v. *Boston*, 258 Mass. 267, 269.

In actions of this nature against a municipality, the plaintiff can recover only by establishing that the decedent at the time of his injury was a traveller on the highway. It is for the protection of travellers alone that the duty of providing sufficient railing is imposed on cities and towns. *Commonwealth* v. *Wilmington*, 105 Mass. 599. *Babson* v. *Rockport*, 101 Mass. 93, 98. The plaintiff must also establish that the want of railing was the sole cause of the accident. *Block* v.

*Worcester,* 186 Mass. 526, 528. *Williamson* v. *Boston Elevated Railway,* 259 Mass. 229, 231. It is essential for recovery by the plaintiff, therefore, that a causal connection of that nature be made to appear between the want of railing along the highway and the death of her intestate.

We are of opinion that on this record there was nothing to support the inference that there was a causal connection between the death of the plaintiff's intestate and any failure of duty on the part of the defendant. The record is bare of direct evidence. When last seen alive he was not on a public way but sitting on private land. He was then a comparatively short distance from the place where his body was found. It is not shown that he thereafter became a traveller on the highway. He was then not very far from the path through the field which he often used in summer in passing between the center of the town and his home. Whether he failed in an attempt to climb up the embankment and rolled down, or whether he continued to be on private land until he met his death, does not appear. What his actions were, or what happened to him in the meantime, is not indicated by any evidence. It is left a blank. Many conjectures may be indulged as to his course of travel and what caused him to be at the foot of the embankment, some of which are wholly disconnected with any failure of duty on the part of the defendant. They need not be set forth at length. It is enough to say that the cause of the death is left to surmise and speculation. It is not established by direct proof or by fair inference from facts disclosed by the evidence that the death resulted from a failure of duty on the part of the defendant. The case falls within the principle of numerous adjudications. *Bigwood* v. *Boston & Northern Street Railway,* 209 Mass. 345, 348. *Donovan* v. *Pullman Co.* 206 Mass. 93. *Moynihan* v. *Boston & Maine Railroad,* 227 Mass. 180. *Brennan* v. *Keene,* 237 Mass. 556. *Jabbour* v. *Central Construction Co.* 238 Mass. 453. *Hamilton* v. *Boston, Revere Beach & Lynn Railroad,* 240 Mass. 458. *Keller* v. *New York, New Haven & Hartford Railroad,* 255 Mass. 526. *Rankin* v. *Brockton Public Market, Inc.* 257 Mass. 6. *Breskin* v. *Boston & Maine Railroad,* 260 Mass. 414. *O'Brien* v. *Boston & Maine Railroad,*

265 Mass. 527. *Gillis* v. *Boston, Revere Beach & Lynn Railroad*, 266 Mass. 481, and cases there collected. *Chicago, Milwaukee & St. Paul Railway* v. *Coogan*, 271 U. S. 472. *Kansas City Southern Railway* v. *Jones*, 276 U. S. 303. The cases on which the plaintiff relies are distinguishable and need not be reviewed. It follows that the plaintiff cannot prevail and that judgment is to be entered for the defendant. *Kaminski* v. *Fournier*, 235 Mass. 51, 55. In accordance with the terms of the report the entry may be,

*Final judgment to be entered*
*for the defendant.*