GEORGE RASH vs. ANDREW I. ALBERT.

Berkshire.    September 17, 1929. — May 26, 1930.

Present: RUGG, C.J., PIERCE, WAIT, SANDERSON, & FIELD, JJ.

*Agency*, Scope of authority or employment. *Negligence*, In construction of bridge. *Evidence*, Presumptions and burden of proof, Interrogatories, Admissions, Matter of conjecture. *Proximate Cause*.

At the trial of an action of tort for personal injuries sustained through the collapse of a newly built bridge over a stream, there was evidence that there was a public way at both ends of the bridge; that the bridge was "used freely by the general public"; that the way and the bridge gave access to a camp which was owned by the defendant and which accommodated several hundred guests, to the plaintiff's residence and to the cottages of many others on the west shore of a lake; that in June, just previous to the time for opening the defendant's camp, the old bridge was removed and the new one constructed; that the work was done by men who worked at the defendant's camp during the summer and by neighbors of the defendant; that they were hurrying to finish the work before the opening of the camp; that an employee of the defendant who had charge of opening the camp "was . . . giving all the instructions" in the work and had charge thereof; that the defendant was present "once in a while" during the progress of the work; that the collapse of the bridge was due to defective construction; and that, after the collapse, the defendant asked the plaintiff who was to blame for his injuries, and the plaintiff said, "I can't blame nobody but you. You was the one that put this new bridge in, or your help . . . I am going to sue you," whereupon the defendant said, "That's right. You sue me and then I'll whirl around and sue the town." The defendant, in answer to interrogatories, stated "In conjunction with several neighbors we repaired this bridge. I did not help personally. Some of my men were asked to and did. This work was for the benefit of everybody living on the west shore . . . To the best of my recollection no one had charge of the work. All or several living on the west shore united to do it." The defendant did not contend that the plaintiff was guilty of contributory negligence. *Held*, that

(1) A finding was warranted that the work of constructing the new bridge was done under the direction of the defendant's employee and that the defects causing the collapse were due to the employee's negligence;

(2) On all the evidence, a finding was warranted that the employee, in directing the work, was acting within the scope of his employment;

(3) The defendant's statement in his answers to interrogatories, that

"we repaired this bridge," was evidence that his men were working on the bridge with his approval: the plaintiff was not bound by the statement that "no one had charge of the work" and other statements contradicted by the plaintiff's evidence;

(4) The statements by the defendant in his conversation with the plaintiff were some evidence of an admission of liability by him;

(5) Findings were warranted that the defendant, having undertaken through his employee the work of constructing the bridge, was bound to exercise due care in performing it; and that he failed to exercise due care;

(6) A verdict for the plaintiff was warranted.

There was further evidence at the trial of the action above described that, at the time the bridge collapsed, the plaintiff was driving across it a cart loaded with sand or gravel; that sand or gravel went into the plaintiff's eye causing injury to it; that the horses were "raring and tearing"'when he unhitched them; and that he could not say whether the sand or gravel went into his eye when the cart went down with the bridge, or when he unhitched the horses, or because of some movement of the horses or cart, or because of a rather high wind which was blowing. A physician testified that he saw the plaintiff nine days after the accident; that the plaintiff then told him that gravel "hit him in the eyes"; that the plaintiff then had an ulcer of the cornea of the eye; that "probably the blow originally caused damage to the tissues, then the ulcer resulted" and that an ulcer "may be produced in various ways." *Held*, that

(1) The plaintiff was required merely to prove by a preponderance of the evidence that the injury resulted from the defendant's negligence: he was not required to exclude all other possibilities as to the cause of the injuries;

(2) A finding was warranted that the condition of the plaintiff's eye was caused by sand or gravel which went into it when the bridge collapsed: the cause of his injury was not a matter of conjecture.

TORT. Writ dated July 26, 1927.

Material evidence at the trial in the Superior Court before *Burns*, J., is stated in the opinion. The judge denied a motion by the defendant that a verdict be ordered in his favor. Subject to leave reserved under G. L. c. 231, § 120, a verdict for the plaintiff in the sum of $3,000 was recorded. The judge thereafter ordered the entry of a verdict for the defendant. The plaintiff alleged an exception.

*J. M. Shea*, for the plaintiff.

*M. B. Warner*, for the defendant.

FIELD, J. In this action of tort for negligence a verdict for the plaintiff was returned by the jury, but in accordance with leave reserved the judge ordered the entry of a verdict

for the defendant. G. L. c. 231, § 120. The plaintiff excepted.

The plaintiff seeks to recover damages for injury to his left eye, alleged to have been caused by the collapse of a bridge across a stream in the town of Lanesborough, due to the negligence of the defendant. It appeared in evidence that the "road on both sides of the bridge was accepted by the town of Lanesborough, and the bridge was open and used freely by the general public." The residence of the plaintiff, a camp owned by the defendant "accommodating as many as five hundred guests," and about sixty cottages on the west shore of Pontoosuc Lake were reached by the road and bridge. In June, 1927, one bridge was removed and another built. The new bridge was five or more days in building. There was evidence that on June 29, the day after it was finished, it collapsed by reason of its defective construction, while the plaintiff, seated on a dump cart loaded with sand or gravel and drawn by two horses, was driving across it and that he lost the sight of his left eye. It is not contended that the plaintiff was negligent. The defendant, however, contends that the evidence did not warrant a finding that he was responsible for the collapse of the bridge or that its collapse caused the injury to the plaintiff's eye.

1. The evidence warranted a finding that the defendant was responsible for the collapse of the bridge.

In answer to interrogatories propounded by the plaintiff the defendant stated: "In conjunction with several neighbors we repaired this bridge. I did not help personally. Some of my men were asked to and did. This work was for the benefit of everybody living on the west shore . . . To the best of my recollection no one had charge of the work. All or several living on the west shore united to do it."

The plaintiff testified that after the accident he had a conversation with the defendant, in which the defendant asked the plaintiff who was to blame for the injury to his eye, and the plaintiff said, "I can't blame nobody but you. You was the one that put this new bridge in, or your help . . . I am going to sue you," and that the defendant said,

"That's right.  You sue me and then I'll whirl around and sue the town of Lanesborough."

There was evidence from which it could have been found that one Langworthy, who had charge of opening the defendant's camp, had charge of the construction of the bridge; that this was apparent to persons who saw the work being done — "he was . . . giving all the instructions"; that the men who worked on the bridge worked at the defendant's camp during the summer; that they were hurrying to finish building it before the opening of the camp, which was to take place in a few days, and that the defendant was present "once in a while" during the progress of the work.  One witness testified that he went to work for the defendant in June, 1927, and that his first work was in connection with building the new bridge under the direction of Langworthy. There was also testimony that a "lot of the neighbors" were working on the bridge and that Langworthy told the plaintiff that "if he, Rash, wanted to work for nothing he could."

A finding, therefore, was warranted that the new bridge was built by employees, or employees and neighbors, of the defendant under the direction of Langworthy, an employee of the defendant, and that defects in its construction causing its collapse were due to the negligence of Langworthy.  A finding also was warranted that Langworthy in directing the building of the bridge was the agent of the defendant, acting within the scope of his employment.  The defendant's answer to the plaintiff's interrogatory, that "we repaired this bridge," tended to show that his employees were working on it with his approval.  The plaintiff, however, was not bound by the defendant's answers which were contradicted, such as the answer that "no one had charge of the work." *Washburn* v. *R. F. Owens Co.* 258 Mass. 446.  The conversation between the plaintiff and the defendant after the accident was some evidence of an admission by the defendant of his responsibility for the defective condition of the bridge.  It was at least equivocal.  *Commonwealth* v. *Helfman,* 258 Mass. 410, 414–415 and cases cited.  *Carroll* v. *Carroll,* 262 Mass. 10. See cases collected in 14 Mass. Law Quar. 62 *et seq.*  This

answer of the defendant and this evidence of admission by him, taken in connection with the evidence that Langworthy was employed to open the camp, that the time to open the camp was at hand, that it was to be reached by way of the bridge in question and that the defendant was present "once in a while" during the building of the bridge, when presumably he could have seen Langworthy in action, warranted the conclusion that Langworthy was acting for the defendant and that, through him, the defendant undertook to direct the construction of the bridge. It could have been found that this undertaking imposed upon the defendant a duty to exercise care which he failed to perform because of the negligence of Langworthy.

2. The evidence warranted a finding that the collapse of the bridge caused the injury to the plaintiff's eye.

The evidence tended to show that sand or gravel, with which the cart was loaded, went into the plaintiff's left eye, as well as his right eye, while he with the cart and horses was "in that hole" where the bridge collapsed. There was testimony to the effect that the bridge was about thirty-two feet long, that it began to settle when the horses were half way across it and fell when they were within three feet of the farther bank of the stream, that the plaintiff and the cart went down with the bridge while the horses were on planks of the bridge, which inclined toward the bank, and that the horses were "raring and tearing" when he unhitched them. He could not tell whether the sand or gravel went into his eyes "when the horses was going out or when the cart went down." Nor could he tell whether the sand or gravel went into his eyes because of some movement of the cart or of the horses or because of a rather high wind which was blowing. In spite of the uncertainty as to the precise time and way that the sand or gravel got into the plaintiff's eyes, we cannot say that it could not be found that the cause was the collapse of the bridge. *Stevens* v. *Boxford*, 10 Allen, 25. *Mooney* v. *Connecticut River Lumber Co.* 154 Mass. 407, 409. *Heuser* v. *Tileston & Hollingsworth Co.* 230 Mass. 299, 302.

There was evidence that the plaintiff became "practically

and permanently blind in the left eye." An eye specialist who saw him nine days after the collapse of the bridge, testified that the plaintiff had ulcer of the cornea of the left eye, that the plaintiff told him that gravel "hit him in the eyes" and that "probably the blow originally caused damage to the tissues, then the ulcer resulted," but that such an ulcer "may be produced in various ways." On this evidence and the other testimony in the case, it could have been found that the condition of the plaintiff's left eye was caused by sand or gravel which went into it when the bridge collapsed. The plaintiff "was not required to exclude all other possibilities as to the cause of the injury if by a preponderance of evidence he proved that it was caused by the defendant's negligence." *Navien* v. *Cohen*, 268 Mass. 427, 431, and cases cited. We cannot say that the plaintiff has not made this proof. The cause of his injury was not purely conjectural. The evidence in this case goes beyond that in *Green's Case*, 266 Mass. 355, relied on by the defendant, for here a physician testified to his opinion as to the cause of the injury.

> *Exceptions sustained.*
> *Original verdict of jury to stand.*
> *Judgment for plaintiff on that verdict.*