## LEANDER WALKER *vs.* BENZ KID COMPANY.

Norfolk.　April 6, 1932. — June 28, 1932.

Present: RUGG, C.J., CROSBY, WAIT, & DONAHUE, JJ.

*Negligence,* Of one owning or controlling real estate, Res ipsa loquitur. *Evidence,* Matter of conjecture, Presumptions and burden of proof.

At the trial of an action of tort for personal injuries suffered when the plaintiff, who under oral contract with the defendant had been painting a building occupied by the defendant'as lessee, fell as he was on the roof removing gutterhooks used to support rigging upon which he had worked, he contended that the fall was caused by the giving way of a section of the gutter into which he had "toed" one of his feet as he moved along the roof, and that the section of the gutter gave way because of a latent defect, its improper construction or state of disrepair. Upon exceptions saved by the plaintiff after the entry, by order of the trial judge, of a verdict for the defendant, it was *held,* that

(1) If there was an obvious defect in the gutter, the plaintiff as a matter of law assumed the risk arising therefrom;

(2) Testimony by an expert builder, that a square or butt joint used in constructing the gutter in his opinion was not a good form of construction in the absence of a special support, did not warrant a finding of a latent defect, there being no evidence of lack of such special support;

(3) Mere evidence that within a month before the accident a short piece of the gutter was seen to have a slight separation where it was jointed to the next section would not warrant a finding that a latent defect in the gutter existed, as there was no evidence that such slight separation tended to weaken the strength of the gutter in any way;

(4) Upon the description given by the plaintiff of the circumstances attending the accident, the cause thereof was left a matter of conjecture;

(5) The doctrine *res ipsa loquitur* was not applicable;

(6) The verdict properly was ordered entered.

TORT. Writ dated June 12, 1928.

In the Superior Court, the action was tried before *Brown,* J. Material evidence is described in the opinion. There was recorded, with leave reserved under G. L. c. 231, § 120, a verdict for the plaintiff in the sum of $21,750; and afterwards by order of the judge a verdict was entered for the defendant. The plaintiff alleged exceptions.

*F. J. Squires*, (*E. J. Flavin* & *D. J. Cohen* with him,) for the plaintiff.

*F. G. Katzmann*, for the defendant, submitted a brief.

CROSBY, J.   This is an action to recover for personal injuries received by the plaintiff on January 10, 1928.   At that time he was a member of a partnership engaged in the painting business, and was under an oral contract to paint two wooden buildings occupied by the defendant as lessee. On the day before the accident he began to paint a small pitched roof wooden building, and hung all the appliances on this building by attaching to the ridgepole two peak-hooks, about eighteen feet apart, to which were attached three-quarter inch ropes running down the roof, and attached to two gutterhooks placed three or four inches above the gutter on the shingles, thus holding them fast and preventing swaying.   Attached to the two peakhooks were separate lifelines which ran down the roof and hung over the edge of the roof and gutter to the staging below. The staging was hooked to eyes on the lower part of the gutterhooks which curved around the gutter and extended vertically a few feet below the gutter.   At the time of the accident the painting had been finished and the plaintiff was in the act of removing the gutterhooks.   In order to do this he went upon the roof taking the life line in his left hand, "edged along the edge of the roof with his weight thrown on his left knee . . . and with his right foot 'toed into' the gutter and using the life line for support . . . [he] tested the gutter as he moved along."   He had unfastened and removed one of the gutterhooks, and was proceeding to the other in like manner when he fell from the roof and was injured.   At the same time a section of the gutter ten or twelve feet long broke and fell.   He contends that there was a latent defect in this part of the gutter of which the defendant had knowledge, or ought reasonably to have known of, and that the defendant was negligent in not warning him of this defect.

At the close of the plaintiff's case the defendant rested without offering any evidence.   The case was then submitted to the jury, and after the return of a verdict in favor

of the plaintiff, the judge with the consent of the jury, reserved leave to enter a verdict for the defendant in accordance with G. L. c. 231, § 120. Thereafter, the judge entered a verdict for the defendant, and the plaintiff duly claimed an exception.

The plaintiff assumed all the obvious risks of his employment, but the defendant was bound to warn him of any latent defect in the premises which he could not discover upon reasonable observation and inspection, and of which the defendant had knowledge, or in the exercise of reasonable care should have had knowledge. *Mulchey* v. *Methodist Religious Society*, 125 Mass. 487. *Sullivan* v. *New Bedford Gas & Edison Light Co.* 190 Mass. 288. *Crimmins* v. *Booth*, 202 Mass. 17. *Hall* v. *Henry Thayer & Co.* 225 Mass. 151. *Pilling* v. *Hall*, 251 Mass. 425. *Forance* v. *Bigelow Hartford Carpet Co.* 257 Mass. 507. *Favereau* v. *Gabele*, 262 Mass. 118. "The owner of a staging who furnishes it for the use of an independent contractor ordinarily owes the same duty to an employee of the contractor that the owner would owe to his own employee using the same staging." *Gray* v. *Boston, Revere Beach & Lynn Railroad*, 261 Mass. 479, 482.

There was no evidence which would warrant a finding that there was any defect latent or other in the gutter. There was evidence that the piece of gutter which fell was joined to the next section of the gutter "in a square or butt joint." An expert builder called by the plaintiff testified that "a 'square butted joint' . . . in his opinion was not a good form of construction, but a mitered or diagonal joint was better because there is a better and thicker nailing surface and better holding power and a mitered joint is twice as strong as a square butt joint, unless there is a special bearing surface underneath such as . . . rafters extending out beneath the joint." There was no evidence as to whether or not there was any such special support. This evidence does not show a defect or an improper form of construction in the gutter. It merely tends to show that it is not so good as another form, but falls far short of showing that it is a defect. Moreover, it is not shown it

was not obvious that the joint was square. If it be assumed that it was obvious and constituted a defect, the defendant is not liable, because the plaintiff assumed all the obvious risks incident to his use of the apparatus or appliances upon which he was employed to work, and the defendant had no duty to change the mode of construction. *Sullivan* v. *New Bedford Gas & Edison Light Co.* 190 Mass. 288, 292. *Gainey* v. *Peabody*, 213 Mass. 229. *Murray* v. *Nantasket Beach Steamboat Co.* 248 Mass. 587, 589. *Favereau* v. *Gabele*, 262 Mass. 118. One Wilkins called by the plaintiff testified that late in December preceding the accident he noticed a short piece of the gutter had a slight separation where jointed to the next section, and he could see this only when he was on a ladder at a point three or four feet directly under the gutter. There is no evidence to show that this slight separation was a defect or tended to weaken the strength of the gutter in any way. The description of its appearance after it had fallen cannot be construed as indicating a defective condition. There was no evidence to show that it fell because of any weakness at the joint or elsewhere, nor that a sound, well constructed gutter would stand the strain put upon it by the plaintiff. Gutters on buildings ordinarily are for the conveyance of water, and it cannot properly be found that a gutter is defective because it fails to hold a part or all of the weight of a man using it as a means of moving along the edge of the roof.

If it be assumed that the slight separation at the joint constituted a defect, there is no evidence that such defect was the cause of the accident. The plaintiff testified that he went upon the roof for the purpose of lowering the gutter-hooks from the eaves; that he took a life line attached to the peakhook in his left hand, leaned on his left knee on the roof, and with his right foot "toed into the gutter" edged along the roof, with his body inclined toward the roof; that he progressed toward the second hook "by bearing . . . [his] weight on the shingles and throwing . . . [his] weight towards the shingles and hitching along with . . . [his] feet"; that before he took each succeeding step he

tested the gutter with each hitch he made on the roof; that he tested the gutter as his body moved forward by pressing on the gutter with his right foot, and while doing so he felt no motion and heard no creaking or noise; that he had progressed three or four feet toward the second gutterhook when the accident happened. Thereafter he did not remember anything until he was picked up in the alley.

To recover, "While 'the plaintiff is not bound to exclude every other possibility of cause for his injury except that of the negligence of the defendant, he is required to show by evidence a greater likelihood that it came from an act of negligence for which the defendant is responsible than from a cause for which the defendant is not liable. . . .' *Bigwood* v. *Boston & Northern Street Railway*, 209 Mass. 345, 348." *Gates* v. *Boston & Maine Railroad*, 255 Mass. 297, 301. *Crisafi* v. *Sells Floto Circus*, 262 Mass. 120, 122. Although the plaintiff was not "required to exclude all other possibilities as to the cause" of the accident, *Navien* v. *Cohen*, 268 Mass. 427, 431, and cases cited, he was bound to show by a preponderance of the evidence that a defective gutter was the cause of his fall. *Young* v. *New York, New Haven & Hartford Railroad*, 273 Mass. 567, 570. This he has failed to do. This is not a case where the evidence and the reasonable inferences to be drawn from it show that the defendant was negligent from the mere fact that the plaintiff fell. Many conjectures may be indulged in as to the cause of the plaintiff's fall. It may have been caused by slipping, sudden dizziness or weakness, or too great a strain put upon a sound gutter. The gutter may have been wrenched loose by the plaintiff's body as he fell, rather than having caused his fall. Without considering other conjectures it cannot be said that the gutter could not have fallen except for negligence of the defendant. "Where the injury might well have resulted from any one of many causes, the plaintiff, by a fair preponderance of the evidence, must exclude the operation of those causes for which the defendant is under no legal obligation." *Trim* v. *Fore*

*River Ship Building Co.* 211 Mass. 593, 595. See also *Carter* v. *Boston & Albany Railroad,* 177 Mass. 228; *Wadsworth* v. *Boston Elevated Railway,* 182 Mass. 572; *Hofnauer* v. *R. H. White Co.* 186 Mass. 47.

In *Rankin* v. *Brockton Public Market, Inc.* 257 Mass. 6, 9, 10, where the plaintiff was injured while a customer in the defendant's market, there was testimony that it seemed to her "a crash came down on the top of her head" and she remembered nothing more until she regained consciousness. In that case it was said the evidence "Manifestly . . . is insufficient to prove any negligence of the defendant or its servants. The cause of the fall is purely conjectural. No one saw anything hit her. If, in fact, she was hit upon the head by the bottle, there is nothing but conjecture to explain how the bottle came to fall. There is no evidence of any negligent act . . . . The plaintiff may have fallen from a weakness accompanying a sudden pain in the head, or from slipping, and have jarred the bottle from the endless belt. Some sudden movement of a customer or salesman may have tilted or shaken the carrier. Some perfectly innocent cause may have occasioned a sudden jerk in the movement of the belt which resulted in the fall of the bottle." In that case, as in the present, the plaintiff fell and in both something else fell at the same time. But in the case at bar there is nothing more to show that the fall of the gutter caused the plaintiff's fall than there was in the *Rankin* case to show that the bottle was the cause of the plaintiff's injury. The case comes within the principle of *Moore* v. *Amesbury,* 268 Mass. 462, and the cases there cited at page 466.

The doctrine of *res ipsa loquitur* is not applicable to the case at bar. That applies only when the circumstances are such as to afford a reasonable inference that according to ordinary experience the accident would not have happened except for negligence of the defendant. *Wadsworth* v. *Boston Elevated Railway,* 182 Mass. 572, 574. *Washburn* v. *R. F. Owens Co.* 252 Mass. 47, 54.

In view of the conclusion reached it need not be determined whether the plaintiff is precluded from recovery on

the ground of contributory negligence, or that he assumed the risk of injury.

As the verdict was properly directed for the defendant the entries must be

*Exceptions overruled.*