## AUGUSTUS SHEPPARD'S CASE.

Suffolk.　　January 8, 1934. — September 11, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & FIELD, JJ.

*Workmen's Compensation Act,* Incapacity, Refusal to submit to operation.

At the hearing by a member of the Industrial Accident Board of a claim under the workmen's compensation act for compensation for total disability caused by the falling of a steel beam upon the top of the employee's foot about seventeen months before the hearing, there was expert testimony by surgeons and other evidence, and a report by an impartial physician; and, on an appeal by the insurer from a decree of the Superior Court awarding compensation in accordance with a decision by the board, it was *held,* that, on conflicting evidence, findings were warranted that the employee's condition at the time of the hearing resulted from the injury and that he then was totally incapacitated.

At the hearing above described, a surgeon who last examined the employee before the hearing testified that he "felt" that the employee "should be operated on for permanent relief," but that "He will be disabled between two and three months at least from doing hard work after that operation." Another surgeon testified that he "did not believe that there was any operation indicated" at his examination about seven months before the hearing. *Held*, that upon such and related evidence the Industrial Accident Board were not required as matter of law to find that "it fairly appears that the result of such operation will be a substantial physical gain," or that the employee, after reasonable opportunity therefor, had unreasonably refused to submit to an operation; and were not precluded from finding total incapacity during the period in question.

There was evidence, described in the record of the case above described, that the employee tried unsuccessfully to obtain work which he could do during the period in question. There was no evidence of business conditions during that period, which was from December, 1932, to May, 1933. *Held*, that in the absence of such evidence the single member and the board were entitled to use their own judgment and knowledge in determining whether the employee was totally incapacitated and were not precluded from finding that his inability to secure work was attributable to his injury rather than to business conditions.

CERTIFICATION to the Superior Court under the provisions of the workmen's compensation act of a decision by the Industrial Accident Board that the claimant was entitled to compensation for total incapacity from December 9, 1932, to be continued subject to the provisions of the statute.

The hearing before a single member of the board was on May 10, and his decision was filed on May 18, 1933. The case was heard by the board on June 8, and their decision was filed on June 20, 1933. Material facts and evidence before the board are described in the opinion. In the Superior Court, by order of *Whiting*, J., a final decree was entered in accordance with the decision of the board. The insurer appealed.

The case was submitted on a brief.

*H. B. White*, for the insurer.

No argument nor brief for the claimant.

FIELD, J. This is a workmen's compensation case. G. L. (Ter. Ed.) c. 152. The Superior Court entered a decree in accordance with the conclusions of the Industrial

Accident Board, that the employee as a result of an injury received on December 15, 1931, had been totally incapacitated for work since December 9, 1932, when compensation was discontinued by the board, and was entitled to compensation for total incapacity from December 9, 1932, to be continued subject to the provisions of the act. The insurer appealed.

It was agreed that the employee received an injury on December 15, 1931, but the insurer contends that the evidence did not warrant a finding that his condition at the time of the hearing by the board member resulted from that injury or that he then was totally incapacitated. We cannot say that the findings were not warranted.

The employee's injury was a fracture of the first metatarsal of his left foot, caused by a steel beam falling on top of the foot. At the hearing before the single member on May 10, 1933, the employee testified that at the time of the injury "he was a blacksmith on auto work, the heaviest kind of work," that he worked two days in June, 1932, but "has not done any work since. . . . the foot is so stiff that he can scarcely walk. . . . He cannot step forward on the injured foot at all. . . . His foot is no better than it was some months ago," and that he cannot do heavy work. The impartial physician, who examined the employee on December 1, 1932, in his report stated that there was "an increase in the size of the first metatarso-phalangeal joint" of the injured foot, and that the "fracture has long since healed but there still remains a tenderness over this metatarsal below the fracture. . . . It probably represents a nerve ending that was caught in the callous from adhesions."

There was testimony from three orthopedic surgeons, in some detail, as to the condition of the employee's foot, and the treatment which had been given and ought to be given. All testified to some restriction of motion in the great toe joint of the left foot. One of them, called by the insurer, testified that he examined the employee on July 26, 1932, that the employee "complained of sensitiveness to palpation over and under the first metatarsal throughout its

entire length," that "This man experienced principally a
traumatic injury and fracture of the first metatarsal of the
left foot, with ensuing disability to date," and that the
witness saw the employee again on October 13, 1932, and
"at that time the examination differed slightly from July 26
in that there was little or no sensitiveness under the first
metatarsal and no complaints when rising on the ball of
the foot or rolling to the outer border," but that if the
employee said that then he could not "stand on his feet
all day long doing heavy work such as blacksmith and iron
work," the witness "would not say that he is wrong." The
employee "still complained of symptoms which the . . .
[witness] could not explain from an orthopedic standpoint,"
but the witness "could not rule out possible neurological
background, although he saw nothing to indicate injury to
any one particular nerve." This witness had no basis for
any opinion of the employee's condition at the time of the
hearing. Another of these surgeons, called by the insurer,
who last saw the employee in October, 1932, testified that
he did not think the employee's then condition was a
"proximate result of the broken bone above the toe. There
is a possibility because of the fracture that the nerves
coming along the metatarsal bone would become adhered
to the joint that would cause trouble, but not a probability."
The witness believed the restriction of motion "was due to
some infection," that it "is probably due to constant slight
traumas so that the joint becomes irritated, or infections
in the joint which afterward irritate it." The third sur-
geon, called by the employee, had seen him six times, first
on February 3, 1933, and last on May 1, 1933. He testified
that the employee's great toe joint on the left foot was
enlarged, that there was "a good deal of local tenderness
throughout the joint," and that he did not think that the
employee "can do hard work at the present time," though
"he might be able to do some light work: he does not think
he is totally disabled." This witness testified also to some
enlargement of the joint of the right foot, which he attrib-
uted to arthritis or "flat feet," but that the "left foot is
a little larger at the joint compared with the right, perhaps

one fourth inch larger, which is quite a little difference in a great toe joint."

Some of the evidence above summarized, and other evidence not here summarized, tended to show that the condition of the employee's foot in December, 1932, and thereafter, was not caused by the injury, but the evidence must be considered in its aspect most favorable to the employee. And the evidence so considered warranted a finding that there was a causal relation between the injury and the employee's condition. The evidence of the impartial physician tended to show that the injury was the reasonably probable cause of the condition of the employee's left foot at the time he examined him. *Marlow* v. *Dike*, 269 Mass. 38, 40. *Rash* v. *Albert*, 271 Mass. 247, 252. *Blanchard's Case*, 277 Mass. 413, and cases cited. See *DeFilippo's Case*, 284 Mass. 531, 534–535. And other evidence tended to show that the condition of the employee's left foot at the time of the hearing was a continuance of the previous condition.

The surgeon who last examined the employee before the hearing testified that he "felt" that the employee "should be operated on for permanent relief," but that "He will be disabled between two and three months at least from doing hard work after that operation." Another surgeon testified that he "did not believe that there was any operation indicated in October, 1932." The board was not required as matter of law on this testimony and related evidence to find that "it fairly appears that the result of such operation will be a substantial physical gain," or that the employee, after reasonable opportunity therefor, had unreasonably refused to submit to an operation. *Snooks's Case*, 264 Mass. 92, 93–94. See also *Floccher's Case*, 221 Mass. 54, 55. The board, therefore, was not precluded by testimony in regard to an operation from finding partial or total incapacity during the period in question. Whether failure to submit to such an operation will be a ground for discontinuance of compensation, wholly or in part, is not before us on this appeal.

There was evidence that the employee was incapacitated

for work to a considerable extent and, particularly, that he was incapacitated for the kind of work in which he was engaged before his injury. There was also evidence from which it could be found that he made reasonable efforts to obtain work of a kind which he could perform. He testified to specific attempts which were unsuccessful and stated that he "was looking for anything at all in light work" and "would have taken a light job, but if it was heavy work he could not have done it." There was no evidence of business conditions during the period in question and in the absence of such evidence "the single member and the board were entitled 'to use their own judgment and knowledge in determining that question.'" *Hurwitz's Case,* 280 Mass. 477, 482. In view of the evidence of the employee's physical condition, the board was not precluded from attributing his inability to secure work to the injury rather than to business conditions. See *Manley's Case,* 282 Mass. 38. The finding, therefore, of total incapacity cannot be pronounced unwarranted. *Sullivan's Case,* 218 Mass. 141. *Duprey's Case,* 219 Mass. 189, 193. *Rezendes v. Prudential Ins. Co. of America,* 285 Mass. 505, 512.

*Decree affirmed.*