BESSIE WALNER *vs.* EDWARD SORENTINO.

Suffolk.     December 7, 1932. — October 23, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

*Negligence,* Proximate cause.   *Evidence,* Admitted without objection.

From the record of the trial of an action by a woman for personal injuries sustained in December, 1927, the following appeared: The evidence warranted a finding that the plaintiff's condition immediately after she was injured, an operation in January, 1929, her commitment to a psychopathic hospital in December, 1930, and mental trouble continuously thereafter, were proximate results of her injuries.   There were admitted, without objection, certain hospital records and testimony by a witness for the defendant concerning statements made to him, which records and statements described illness of the plaintiff during 1928 and treatment of her therefor by several doctors.   Those doctors did not testify.   The condition of the plaintiff in 1928, so described, was similar in material particulars to her condition immediately after she was injured and also bore some relation to the condition which caused the operation of January, 1929, and to her subsequent mental trouble.   The trial judge refused a request by the defendant for a ruling that there was no evidence that "the sickness in consequence of which" the plaintiff was treated by the doctors in 1928 was caused by her injuries, and instructed the jury that in assessing the plaintiff's damages they should "eliminate any condition or symptoms or results which you say can't be traced to" her injuries.   *Held,* that
    (1) The records and testimony admitted without objection were entitled to be given their full probative value;
    (2) The evidence warranted a finding that the plaintiff's illness during 1928 was so connected with her earlier and later condition that there was a greater likelihood that it was the result of the same cause than of some other cause;
    (3) There was no error in the refusal of the defendant's request.

TORT.   Writ dated December 19, 1928, and afterwards amended.

The action was tried in the Superior Court before *Walsh,* J.  Material evidence is stated in the opinion.   There was a verdict for the plaintiff in the sum of $5,000.   The defendant alleged an exception.

In his brief, the defendant stated: "The award of $5,000,

of course, was based upon the finding that the plaintiff was made insane by her injury, and was not given alone for the immediate effects of the accident . . . . The defendant . . . recognizes that it was within the province of the jury, by accepting the testimony of the plaintiff's medical experts, to find causal relation between the plaintiff's injury and the psychosis, and that such a finding raises no question of law. The defendant does, however, contend that the jury was permitted, in awarding damages, to consider evidence of a serious illness from which the plaintiff suffered subsequent to her accident, and . . . which is absolutely unrelated by evidence to the plaintiff's injury. The defendant's request for a ruling with regard to the evidence of illness of the plaintiff and medical treatment therefor was denied, and the only question in the case relates to the exception to the refusal to give this ruling."

*E. J. Sullivan*, for the defendant.

*C. C. Steadman*, for the plaintiff.

FIELD, J.    This is an action of tort to recover compensation for personal injuries sustained by the plaintiff as a result of the defendant's negligence in operating an automobile. There was a verdict for the plaintiff. The case comes before us on the defendant's exception to the refusal of the judge to instruct the jury, as requested by the defendant, that "There is no evidence that the sickness in consequence of which Mrs. Walner was treated in 1928 by Dr. Rowen, Dr. Rogers, Dr. Hamilton and Dr. Powers was caused by her injury."

The defendant's request was denied rightly since there was evidence on which it could have been found that the plaintiff's sickness referred to in the request was caused by her injury.

The accident occurred on December 30, 1927. The physician who attended the plaintiff at that time and up to February 10, 1928, testified that she was "suffering from a sprained back, involving the right hip joint, hematoma of the scalp, traumatic neurosis, disturbance in menses," that her condition was "adequately explained by the automobile accident,"

and that when he ceased to treat her "she had traumatic neurosis and menstrual disturbances" for which he advised treatment by a nerve specialist and a gynecologist. There was evidence also that a hysterectomy operation was performed on the plaintiff in January, 1929, that she was committed to the Boston Psychopathic Hospital for observation in December, 1930, and was later removed to the Boston State Hospital where she has been ever since, and that she is suffering from involutional melancholia. It could have been found on contradictory evidence that there was a causal relation between the automobile accident and the condition which necessitated the operation, and, through that condition and that operation, the plaintiff's insanity. And there was testimony, also, by a physician and psychiatrist, that "the effect of such an accident would be that of a mental shock, which would tend to make the person more unstable."

The evidence in regard to the plaintiff's sickness in 1928, referred to in the request for instructions, was as follows: The plaintiff's husband testified that he took his wife to several doctors including Dr. Rowen, Dr. Rogers and Dr. Powers. He testified to the fees paid by him to Dr. Rogers and to Dr. Powers, for medical services. Dr. Hurley, a witness for the defendant, testified that he examined the plaintiff September 24, 1929, in the presence of her husband, and that statements then made to him included, among others, statements in regard to the automobile accident and the treatment of the plaintiff and her physical condition immediately thereafter, and statements that the "following April she was taken sick with a high fever and a swollen face, which was also red and blue. A Dr. Rowen of St. Elizabeth's Hospital saw her and he thought she was suffering from pink eye. She stated she saw no improvement under his care and after a time called a Dr. Rogers of Commonwealth Avenue. Dr. Rogers thought she was suffering from typhoid, but the various tests that were made proved negative. A Dr. Hamilton of Boston was called in consultation and he did not know what the matter was with her, but he treated her for typhoid fever. She was confined to her bed at that time for about six weeks and was then up and about again. She stated that she

felt poorly, and Dr. Rogers told her she was suffering from nerves. She felt something going on in her head. In September, 1928, she consulted a Dr. Powers of Huntington Avenue. He thought her condition was due to nerves and blood trouble. He gave her medicine and injected something in her shoulder. He saw her about twice a week for two months. In December, 1928, she consulted a Dr. Stanton and he sent her to St. Elizabeth's Hospital, where he performed an abdominal operation." The records of the Boston City Hospital, introduced in evidence by the defendant, show the following medical history of the plaintiff, who was a patient there from April 9, 1930, to April 17, 1930: "Up to a year and a half ago the patient was perfectly well, when one morning she woke with severe vertigo, headaches, and the next morning her lower lids puffed up and she went to a local medical doctor, who prescribed for her and stated she had a cold in her kidneys. She was not confined to bed at the time. She became worse. Her entire face and both lids began to puff up, and another local medical doctor told her she had pink eye. After a few days she developed a fever, but no chills, and ran a temperature for three weeks, lying in bed during her fever period, and a specialist claimed she had typhoid fever but it didn't turn out to be so. She was ordered to bed for three weeks following her three weeks' siege of temperature, and when she finally got out of bed she was very nervous and had a funny, indescribable feeling, running from her back to her head, pains in her head, and a feeling of fullness in her head. During the time she didn't menstruate regularly; she would skip several periods at a time." No question was raised as to the admissibility of any of this evidence and it is to be given any evidential value which it may possess. See *Mahoney* v. *Harley Private Hospital, Inc.* 279 Mass. 96, 100.

The evidence of the plaintiff's condition while being treated by the physicians, referred to in the request for instructions, was based in part upon their observations and opinions, though they did not testify directly. This evidence tended to show that the plaintiff's condition during this period was in material particulars similar to her condition prior to Febru-

ary 10, 1928, which could have been found to have been caused by the automobile accident, and that her condition during this intervening period also bore some relation to her condition which necessitated the operation, and to her later mental instability, both of which could have been found to have been caused by that accident. Even without more specific medical testimony the conclusion was not wholly unsupported by evidence and reasonable inferences therefrom that the plaintiff's sickness in the intervening period was so connected with her earlier and later condition that there was a greater likelihood (see *Walker* v. *Benz Kid Co.* 279 Mass. 533, 537, and cases cited) that it was the result of the same cause than of some other cause. *Sheppard's Case*, 287 Mass. 459, 463.

If the defendant's request for instructions required the judge to deal with the subject matter thereof, though not in the precise form requested, that requirement was met by the instruction in the charge as given that the jury in making an award to the plaintiff should "eliminate any condition or symptoms or results which you say can't be traced to the accident."

It is unnecessary to consider whether the refusal of the judge to instruct the jury as requested can be sustained on any ground other than that herein discussed.

*Exceptions overruled.*