MARTIN W. O'CONNOR, administrator, *vs.* MORRIS H. GRIFF.

Worcester.  September 23, 1940. — October 30, 1940.

Present: FIELD, C.J., LUMMUS, QUA, COX, & RONAN, JJ.

*Proximate Cause.*

Expert testimony at the trial of an action for causing death from acute gangrenous appendicitis, contracted, a month after being run into and knocked down by an automobile, by a high school student who, when struck, had been in apparently robust health, warranted a finding that the accident was the proximate cause of the appendicitis and death.

TORT. Writ in the Central District Court of Worcester dated December 31, 1936.

On removal to the Superior Court, the action was tried before *T. J. Hammond*, J. The judge, subject to exceptions by the defendant, denied a motion that a verdict be ordered for the defendant on a count of the declaration for death of the plaintiff's intestate. On that count, the jury

found for the plaintiff in the sum of $4,750. On a count for conscious suffering the verdict was for the plaintiff in the sum of $500.

The case was submitted on briefs.

*J. W. Ceaty*, for the defendant.

*J. J. Moynihan*, for the plaintiff.

RONAN, J. The defendant excepted to the denial of his motion for a directed verdict in an action brought to recover for the death of the plaintiff's intestate on February 4, 1936, from acute gangrenous appendicitis, which the plaintiff contended, and the defendant denied, was due to injuries received by the intestate on January 3, 1936, when he was struck by the defendant's automobile. The single question now presented is whether the evidence was sufficient to warrant a finding that death was caused by the accident.

The intestate, a high school student sixteen years of age and apparently in robust health, was struck by the defendant's automobile while he was crossing a street, in Spencer. The details of the accident came principally from the intestate. He said that he put out his hand to protect himself and that the headlight cut his hand. The day after the accident he complained of his back and right side, but he was unable to describe the pain, "just sore, but you would be, if you got hit by an automobile and knocked down, you would expect to be sore." On the same day he stated that he had a pain in his right side and that "You would feel [it] if an automobile banged you on the ground, you couldn't help it." The physician who treated him immediately after the accident found that the intestate was suffering from a moderate concussion, due to a violent blow which had shaken him up; that within a few days after the accident he complained of muscular soreness in various parts of his body, which the witness attributed to the violent fall and for which, on January 16, 1936, he prescribed sedatives. The intestate had also sustained an injury to his left foot but the X-ray showed no fracture. After the accident the intestate went out occasionally. He attended school on some days between January 16, 1936,

and January 23, 1936, during a part or the whole of the school sessions, but he was unable to study. He was unsteady on his feet and while walking home on the third Sunday after the accident he fell down three times. On January 28, 1936, he had an attack of nausea and two days later submitted to an operation for appendicitis from which he died on February 4, 1936.

The plaintiff and the defendant each called two medical witnesses who gave their opinions as to the cause of the appendicitis. The defendant's experts testified that this disease was caused by an infection and not by trauma, and that there was no causal connection between it and the accident. The physician who attended the intestate for his injuries testified that the accident was the precipitating cause, an aggravating cause; "that perhaps anything which would produce a congested background would be the activating cause in the developing of appendicitis"; that the disease could be caused by anything that produced enough congestion to become a field of inflammation and that a severe tortion of the abdominal organs could lay the congested foundation for the development of an infection. He also testified that he did not know if the accident had aggravated a preëxisting condition or whether there was any preëxisting condition or whether the disease arose after the accident; that he did not think his opinion was worth anything and he did not attempt to form one. The second physician, whose qualifications do not appear to have been questioned, testified in answer to a hypothetical question, which could have been found to have been based upon the facts, that in his opinion there was a causal relation between the accident and the appendicitis. His reason for his opinion was that "in direct or indirect trauma to the abdominal wall you can have a condition whereby the contents of the cecum may be forced from the cecum into the appendix, causing the initiation of an inflammatory process of the appendix." He further testified that the intestate had fallen and complained of his right side; that, while he did not have any actual knowledge that the contents of the cecum were forced into the appendix, he had a basis

for his opinion, and he referred to an experiment, the nature of which does not appear in the record; that the matters included in his reasons for his opinion might happen and if they did happen his conclusion would follow.

The burden was upon the plaintiff to establish a causal connection between the accident and the appendicitis, but he was not bound to exclude every possible cause other than the accident. He has sustained the burden if the evidence shows that there was a greater likelihood that the appendicitis resulted from the accident than from some other source. *Cooper's Case,* 271 Mass. 38. *Blanchard's Case,* 277 Mass. 413. *DeFilippo's Case,* 284 Mass. 531. *Geagan's Case,* 301 Mass. 319. The jury, in view of the evidence of the nature of the accident, the complaints of the intestate, and the location of the muscular soreness could accept as probably true the opinions of the experts that the accident caused an inflammation of the appendix. We cannot say that the opinions purported to rest on facts not disclosed by the evidence. The occurrence of the accident and the subsequent appendicitis were undisputed. An expert might properly conclude from the nature of the injuries received at the time of an accident that it was reasonably probable that certain organic changes did result therefrom even though he had no actual knowledge that such changes did in fact occur. An expert who had been furnished with a description of a fall which a plaintiff experienced when thrown from a wagon as the result of a collision could express an opinion that the accident caused appendicitis. *Sullivan* v. *Boston Elevated Railway,* 185 Mass. 602. A medical expert may properly attribute the death to an embolism following an operation although he possesses no actual knowledge of the existence of the embolus. In such a case it was said, "The plaintiff was not required to prove the precise organic changes which took place." *Marlow* v. *Dike,* 269 Mass. 38, 40. *Geagan's Case,* 301 Mass. 319. We cannot rule that there was no evidence of a causal relation between the accident and the death of the intestate. *Cooper's Case,* 271 Mass. 38. *Rash* v. *Albert,* 271 Mass. 247. *Littlefield's Case,* 281 Mass. 434. *Shep-*

*pard's Case,* 287 Mass. 459. *McAuliffe* v. *Metcalfe,* 289 Mass. 67. *Kramer* v. *New York Life Ins. Co.* 293 Mass. 440.

*Exceptions overruled.*