HENRY JOHNSON'S CASE.

Suffolk.     February 3, 1932. — March 2, 1932.

Present: RUGG, C.J., CROSBY, WAIT, SANDERSON, & FIELD, JJ.

*Workmen's Compensation Act,* Incapacity.   *Evidence,* Presumptions and burden of proof.

If, after payments have been made for a time to an employee under the provisions of the workmen's compensation act by agreement between him and the insurer as to compensation for total and partial incapacity, the parties disagree and the insurer under G. L. c. 152, § 7, brings before the Industrial Accident Board the questions, whether incapacity continues and whether further compensation should be paid, the burden, at the hearing thereof, of proving facts necessary to warrant the payment of further compensation rests upon the employee.

At such a hearing, held more than two years and three months after the employee's injury, the only evidence relating to the employee's physical condition was testimony by the employee, testimony by a physician who had attended him and who was called as a witness by the insurer, and a report by an impartial physician. It appeared that the injury which the employee had sustained was a burn upon his foot. The employee testified that he did not think he could go back to his former work. The attending physician testified in substance that the employee was suffering from myxedema, a loss of thyroid function, which was not caused by the injury. The report of the impartial physician was to the effect that he had not known of thyroid diseases having any causal relationship to acute infection from a wound unless the thyroid was directly affected; that, while the employee was incapacitated as a direct result of his accident for about six months, and the accident might have played some part in upsetting his metabolic balance and thus have aggravated the symptoms of his myxedema, the extent of such aggravation was "absolutely problematical" and his belief was that whatever aggravation there was had more than been compensated three months before the hearing. The single member found that the burns which the employee suffered "upset his metabolic balance and

thus aggravated the symptoms of his myxedema," which aggravation still continued, and he awarded continuance of compensation for partial incapacity. The finding was affirmed by the Industrial Accident Board. In the Superior Court, a decree was entered dismissing the claim. The employee appealed. *Held,* that

(1) The finding by the single member and by the board was not warranted;

(2) There was no evidence warranting a finding that the partial incapacity continued;

(3) The claim properly was dismissed.

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board awarding compensation for partial incapacity to the employee.

From the record, it appeared that the weekly payments of $18 and $5.01, described in the opinion, were by agreement of the employee and the insurer; and that the case came before the Industrial Accident Board on May 8, 1931, on application by the insurer for determination under G. L. c. 152, § 7, of the question whether the payments for partial incapacity should be continued. Material facts and evidence shown by the record are described in the opinion.

In the Superior Court, the case was heard by *Gray,* J., by whose order a final decree was entered dismissing the claim. The employee appealed.

*F. E. Knowles & V. J. Deponte,* for the claimant, submitted a brief.

*G. Gleason,* for the insurer.

CROSBY, J. This is an appeal by the employee from a decree entered in the Superior Court, in proceedings under the workmen's compensation act, dismissing a claim for further compensation. On January 25, 1929, the employee while at work for the Glenwood Range Company as a moulder sustained a burn upon his left foot. It is conceded by the insurer that the injury arose out of and in the course of his employment. He has been paid full compensation of $18 a week from the date of the injury until September 19, 1929, when he returned to work, and from that date until the date of the hearing before the Industrial Accident Board he was paid partial compensation at the rate of $5.01 a week based upon two thirds of the difference between his

average weekly wages at the time of his injury and $23.49, the average weekly wages which he was able to earn thereafter. He testified that he did not think he could go back to his work as a moulder.

The only evidence before the single member relating to the employee's physical condition, besides the testimony of the employee himself, was testimony of Dr. Hunt, called by the insurer, and a report by Dr. Phipps, an impartial physician. Dr. Hunt, a specialist in internal medicine, testified in part as follows: He treated the employee, and he diagnosed his case as myxedema, which is a loss of thyroid function. When "Questioned as to whether there is any connection between the injury and this thyroid condition, witness testified none, that he knows of. Because the thyroid gland is a ductless gland, no infection has a chance to get in. He never heard of it becoming septic." When "Questioned as to whether he believed that the accident played any part in upsetting his metabolic balance, witness testified, not working through his thyroid. It is witness' opinion that this condition existed all the time . . . that the condition was present when he first saw him." He was asked "as far as the accident is concerned when you first saw him, did it play any part in his incapacity, witness replied, no." On cross-examination this witness further testified that in his opinion the thyroid trouble had no direct connection with the injury, which was a burn. When asked as to whether he would say "that the present thyroid condition . . . is entirely inconsistent with the septic condition which set in after the burn, . . . [he] testified that he never saw it, never heard of it and never read of it following a septic condition."

Dr. Phipps, the impartial physician, reported in part as follows: "It is difficult to associate myxedema with a burn followed by an infection. On the other hand, the man was apparently in good health up until the time of his accident. Myxedema, is of course, due to thyroid deficiency, and although thyroid disease is often influenced or often caused by changes in diet . . . I have not known of its having any causal relationship to acute infection from a wound

unless the thyroid were directly involved. Apparently this man's initial incapacity was a direct result of his accident but at the time that he entered the Faulkner Hospital in June, 1929, the myxedema was the obvious feature of his condition. I believe, therefore, that this man was incapacitated as a direct result of his accident for about six months. I also feel that the accident might have played some part in upsetting his metabolic balance and thus aggravated the symptoms of his myxedema. How great the aggravation was is absolutely problematical. My best belief is that whatever aggravation to his myxedema was caused by the injury has more than been compensated by February of this year."

The single member found that the burns which the employee suffered "upset his metabolic balance and thus aggravated the symptoms of his myxedema," which aggravation still continues, and that as a result thereof he is still partially disabled. He further found that when the employee returned to work until February 21, 1931, his average weekly wage was $19.95, which is a fair test to establish his present earning capacity of $19.95 per week, and partial compensation of $7.37 a week was awarded by the single member, it being two thirds of the difference between $19.95 and $31, the average weekly wages received before the injury.

The reviewing board affirmed the findings of the single member. In the Superior Court a decree was entered in which it is recited that since February, 1931, the employee has not been incapacitated as the result of his injury of January 25, 1929, and that his claim for further compensation is dismissed. The employee appealed from this decree.

The burden of proving facts necessary to warrant the payment of compensation rests upon the employee. If the essential facts to be proved rest upon conjecture or speculation, the employee is not entitled to prevail. *Sponatski's Case*, 220 Mass. 526, 528. *Upham's Case*, 245 Mass. 31, 34. *Panagotopulos's Case*, 276 Mass. 600, 605. The evidence relating to the employee's physical condition

did not warrant a finding that the partial incapacity of the employee resulted from the injury which he received on January 25, 1929. It is admitted by the insurer that the evidence would justify a finding of partial incapacity, but it contends that there was no evidence tending to show that such incapacity resulted from the injury. The testimony of the physician who attended the employee was to the effect that the existing partial incapacity was in no part due to the injury. The report of the impartial physician that "the accident might have played some part in upsetting his metabolic balance and thus aggravated the symptoms of his myxedema," and the statement, "How great the aggravation was is absolutely problematical," fall far short of justifying a finding that the condition of myxedema was the result of the injury, or that such condition was aggravated by it. It thus appears that whether the disease was the result of the injury and whether the injury aggravated the symptoms of myxedema were both conjectural and speculative.

That the present condition of the employee might reasonably result from the injury, or that such a result was conceivable or possible, will not justify the conclusion that the condition was causally related to the injury. *Green's Case*, 266 Mass. 355, 357. *Perangelo's Case*, 277 Mass. 59, 65. Although the employee testified that he never had any trouble before the accident, that testimony would not be inconsistent with the testimony of Dr. Hunt that his present condition existed all the time. If it existed at the time of the accident it would appear that it had not so far progressed as to affect his health.

We are of opinion that the finding of the single member that the injury upset the employee's metabolic balance and thus aggravated the symptoms of myxedema, and the further finding that this aggravation still continues were without evidence to support them. It follows that, as there is no evidence to warrant a finding that the present partial incapacity of the employee is the result of the injury, the decree of the Superior Court must be affirmed.

*So ordered.*