CHESTER L. HALNAN, JR., *vs.* NEW ENGLAND TELEPHONE AND TELEGRAPH COMPANY.

Norfolk. January 14, 1936. — December 14, 1936.

Present: RUGG, C.J., CROSBY, FIELD, DONAHUE, & LUMMUS, JJ.

*Practice, Civil,* Requests, rulings and instructions. *Evidence,* Presumptions and burden of proof.

A trial judge need not rule on the legal effect of a part only of the evidence bearing on an issue in the case but not decisive of it.

It was prejudicial error to refuse to rule, on the question of damages, that a finding that the plaintiff suffered from a certain brain condition was not warranted, where there was no evidence of such condition and it was not proper to take judicial notice thereof.

TORT. Writ in the District Court of East Norfolk dated March 12, 1935.

The action was heard by *Johnson, J.,* who found for the plaintiff in the sum of $4,540. A report to the Appellate Division for the Southern District was ordered dismissed. The defendant appealed.

*J. N. Clark,* for the defendant, submitted a brief.

*E. O. Proctor,* for the plaintiff.

DONAHUE, J. A telephone pole of the defendant fell upon an automobile owned and operated by the plaintiff. This action was brought to recover damages for personal injuries and for damage to the plaintiff's automobile. The

defendant admitted liability and the parties agreed upon the amount of property damage. A judge of a district court found for the plaintiff and reported to the Appellate Division his refusal to grant three requests for rulings filed by the defendant pertaining to the matter of damages for personal injuries alleged to have been suffered by the plaintiff. The Appellate Division ordered the report dismissed.

The rulings requested by the defendant and denied by the trial judge are as follows: "3. Whether or not the accident of December 20, 1934, caused proximately any injury to the plaintiff's left eye, there is no evidence from which the court would be justified in finding that the condition of the plaintiff's left eye, if corrected by glasses, is such as to prevent his continued employment with . . . [his employer]. 4. Except for the time required to secure corrective eyeglasses, there is no evidence from which the court would be justified in finding that the plaintiff has been disabled since January 21, 1935, or will be at any time disabled in the future, from performing his usual occupation. 5. There is no evidence from which the court would be justified in finding that the plaintiff, as the result of the accident of December 20, 1934, suffered any increase in intercranial pressure or leakage of intercranial fluid."

A summary of the facts appearing in the report here follows. The accident to the plaintiff happened on December 20, 1934. He was struck on the forehead and nose, was confined in bed about a week and returned to work on January 21, 1935. Among the injuries he received was a fracture of the nose which caused a deviation of the septum. Shortly after the accident he began to have nosebleeds. These continued down to the time of the trial on April 24, 1935, on an average of at least one a week. The condition of the nose could be remedied by an operation which might be a serious one.

The plaintiff since his injury has had persistent headaches causing dizziness and drowsiness. The headaches diminished in frequency but still continued after he returned to work. They are most severe in the evening after he has done a hard day's work. He has been more nervous since the accident

and sleeps more than he did before. X-ray pictures of the plaintiff's skull taken on December 29, 1934, January 19, March 1 and March 29, 1935, were negative as to any fracture of the skull but disclosed a progressive thickening of the skull.

As a result of the accident there is an enlargement of the pupil of the plaintiff's left eye to twice the size of the pupil of the right eye which is normal. The pupil of the left eye does not respond to light. There is a partial paralysis of a muscle controlling the closing of the iris of the left eye. Normal vision is usually expressed by physicians as 20/20. The vision of the plaintiff's left eye is 20/35. This means that the plaintiff with his left eye cannot read, at a distance of thirty-five feet, print of a size readable by a normal eye at that distance but can read such print at a distance of twenty feet.

A physician of the company by which the plaintiff was employed as a truck driver examined him a year before the accident and found both eyes normal. He again examined the plaintiff with the same tests on April 22, 1935, and then found the vision of the plaintiff to be as above stated. The physician then gave the plaintiff a "rating," based on impaired vision in the left eye and defective teeth, which was lower than the "rating" required by the company of its employees. As a result, the plaintiff was "laid off from work." It is stated in the report that the physician "testified that . . . [the plaintiff's] vision without glasses was within the limits required for uncorrected vision of truck operators, which was not worse than 20/30 for one eye and not worse than 20/40 for the other, and that with glasses his vision was within the required limits for corrected vision of truck operators, which was not worse than 20/20 in one eye and not worse than 20/30 for the other eye, and that if the plaintiff met the requirements of the . . . [employer] by having his vision corrected by glasses and his teeth fixed, he may be reëmployed."

The trial judge was required to determine the amount of damages which would compensate the plaintiff for all personal injuries resulting from the accident. An element

to be considered in such a determination was any impairment of the plaintiff's working capacity including probable impairment of his future earning capacity. *Ackerly* v. *Boston Elevated Railway*, 275 Mass. 94. From facts stated in the report it appears that at the time of the trial the plaintiff, in addition to a permanent impairment of the vision of the left eye remediable in part, though not wholly, by the use of glasses, still suffered as the result of the accident from a deviated septum remediable by a serious operation, from severe headaches causing dizziness and drowsiness, from nervousness and a progressive thickening of the skull. A finding that there was an impairment of the plaintiff's future capacity to work was warranted.

The third and fourth requests for rulings do not deal with the issue of the plaintiff's future working capacity as a whole. They have to do with the effect of the impaired vision of the plaintiff, which is only one of several elements which should be considered in determining that issue. They seem to be based on a recital in the report that the physician of the plaintiff's former employer "testified . . . that if the plaintiff met the requirements of the . . . [employer] by having his vision corrected by glasses and his teeth fixed, he may be reëmployed." It does not appear that the physician had authority to hire employees and this testimony cannot fairly be held to amount to an assurance that the plaintiff would in fact be reëmployed by his former employer. In any event the issue was not whether there would be such a reëmployment but more broadly whether the plaintiff's capacity for working was, as the result of the accident, less than it otherwise would have been. Whether a former employer will or will not again hire an injured employee has evidential significance but it is not conclusive of the issue whether the employee's working capacity in the future is in fact lessened by his injury. That the plaintiff's vision, if corrected to some extent by glasses, would conform to requirements of his employer does not compel the conclusion that there is no impairment of his future working capacity. The third and fourth requests for rulings deal with a part only of the facts bearing on the impairment

of the plaintiff's ability to work in the future and not with a separate and distinct issue in the case.

The trial judge was not obliged to rule on a part of the testimony selected by the defendant which, taken by itself, apart from facts in the record bearing on the issue of impairment of the plaintiff's future capacity to work, was not decisive of that issue. *Clarke* v. *Second National Bank,* 177 Mass. 257, 264. *Smith* v. *Import Drug Co.* 253 Mass. 368, 371. *Di Lorenzo* v. *Atlantic National Bank of Boston,* 278 Mass. 321, 324. *Barnes* v. *Berkshire Street Railway,* 281 Mass. 47, 50, 51. *Dillon* v. *Framingham,* 288 Mass. 511, 514. The rule requiring a judge sitting without jury, who refuses to grant a request for a ruling, to state, if it does not otherwise appear, either that the law stated in the ruling is unsound or inapplicable or that the facts therein stated have not been found by him (*Bresnick* v. *Heath,* 292 Mass. 293), does not compel a judge to deal with indecisive portions of the evidence. *John Hetherington & Sons, Ltd.* v. *William Firth Co.* 210 Mass. 8, 19. In the denial of the third and fourth requests there was no error.

The defendant's fifth request sought the ruling that there was no evidence which would justify the trial judge in finding that the plaintiff as a result of the accident suffered any increase in "intercranial" pressure or leakage of "intercranial" fluid. The plaintiff introduced no evidence that such a condition existed. The only reference to "intercranial" pressure or to "intercranial" fluid was in the testimony of a physician called by the defendant. He testified that an expert witness called by the plaintiff had told him at some time before the trial that the X-ray pictures taken by him showed no fracture of the plaintiff's skull "but expressed the opinion that it was possible that there was a pin-point fracture in the skull through which intercranial fluid might be escaping and that as a result of the blow on the head there might be intercranial pressure."

The testimony of an expert witness merely that a described condition is "possible" or "might" exist as a consequence of a stated cause does not support a conclusion that such a condition in fact exists as a result of that cause. *De Filippo's*

*Case*, 284 Mass. 531, 534, and cases cited. Even if the plaintiff's expert had given such testimony from the witness stand it would not warrant a conclusion that as a result of the accident the plaintiff suffered any increase in "intercranial" pressure or leakage of "intercranial" fluid. The plaintiff's expert did testify that X-ray pictures taken later than the time of the alleged conversation with the defendant's physician showed a progressive thickening of the skull. But there was no expert testimony that a thickening of the skull did or could have any connection with any increase of "intercranial" pressure or leakage of "intercranial" fluid, and the judge could not take judicial notice of such a causation.

There was no evidence justifying the trial judge in finding that the condition described in the fifth request existed. No ground for the refusal of the request was stated by the judge and we cannot say that its refusal was not prejudicial to the defendant. There must be a new trial on the question of the damages for personal injury suffered by the plaintiff.

*Order dismissing report reversed.*

*Case to stand for a new trial on the question of damages for personal injuries only.*