CHARLES ROBINSON'S CASE.

Suffolk.    January 6, 1938. — February 28, 1938.

Present: RUGG, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Workmen's Compensation Act*, Injuries to which act applies. *Proximate Cause.*

Testimony by medical experts and other evidence warranted a finding by the Industrial Accident Board that dermatitis disabling an employee in a bleachery was caused by his contact with dyes, chemicals and vapors in the course of his work, and that he suffered an injury arising out of and in the course of his employment.

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board.

The insurer appealed from a decree entered by order of *Williams*, J., in accordance with the decision.

*F. L. Guertin*, for the insurer.

*H. W. Radovsky*, for the claimant.

DOLAN, J. This is a workmen's compensation case. The single member of the Industrial Accident Board found that the employee had failed to sustain the burden of proving that he sustained an injury arising out of and in the course of his employment "or that there is a causal connection between his present condition and his employment," and denied his claim for compensation. On review the board reversed the finding of the single member, and found upon all the evidence that as a result of exposure to and contact with dyes "and/or" chemicals or their vapors in the course of his employment the employee received a personal injury, to wit, a dermatitis, which arose out of his employment on or about November 1, 1935. The board also found that the employee was partially or totally incapacitated from earning wages from November 1, 1935, to April 15, 1936, and that since that date he has been totally incapacitated for work as a result of the injury, and made orders for payment of compensation. Upon certification to the Superior

Court the judge entered a final decree in accordance with the decision of the board. The insurer appealed and contends that the evidence is not sufficient to support the finding for the employee.

The evidence in its aspect most favorable to the employee may be summarized as follows: The employee had worked for about thirty-seven years in the bleaching and dyeing plant of the Fall River Bleachery. For twenty years he had been foreman of the finishing room but his duties took him to all parts of the plant. The odors of chemicals could be detected all over the plant. The chemicals used were "sodium, hydrochloride, hydroxide, sodium bicarbonate, metasilicate of soda, common salt, the sulphurated oils, castor and olive, soap, pine oil, starch. Altogether there may be ten or fifteen chemicals used in the plant." In the dye house the floor was "wet because of the dye coming out of the vats . . . it is damp in that room." If those working there remained any length of time they would get the vapors in their clothes. Fumes came from the bleach room and mangle room, but the fumes from the dye room "are more than in other rooms. The fumes get up into" the finishing room as well. The cloth that came to the finishing room was supposed to be dry, but sometimes it had to be dampened and put through a machine similar to an ironer. At times the employee had to handle the cloth and the dye came off on his hands. Since he was sixteen years of age he had had varicose veins, and he wore an elastic stocking which came within six inches of the knee cap of his left leg. His underwear was knee length. In November, 1935, a rash broke out in the area between the top of the elastic stocking and the knee cap. It was itchy and this caused him to scratch it. The nurse at the plant observed this and treated the affected part for about three weeks. His condition was brought to the attention of the plant doctor who referred him in January, 1936, to a specialist in dermatology who treated him up to March 13, 1936. The employee then went to another specialist in the same line who treated him from that time on. In April, 1936, he gave up work on advice of this physician and had

not worked since. At the time of the hearing the disease had spread all over his head and body. He was "shrinking away." He had not had any serious illness before, nor any skin disease except a dermatitis at his finger tips about twenty years before.

The impartial physician reported in writing on October 17, 1936, that he had examined the employee and found him to be suffering from a condition known as dermatitis exfoliativa, and that from the history and the then symptoms, it was his opinion that the employee's "trouble was caused by contacting some dye stuff in the course of his occupation at the bleachery."

One of the specialists who had treated the employee testified that when he first examined the employee he did not believe his trouble to be a true dermatitis exfoliativa, as it was not then generalized. He further stated that the term is a very broad one, including idiopathic dermatitis, the cause of which is unknown, and other cases where there is a history of internal irritation from arsenic; that he was certain that there was a history of external irritation in some cases; and that he "has had one such case himself." His opinion when he first saw the employee was that there was external irritation, and the exposure to the chemicals he had heard about would be an adequate cause for the condition he found. Whether that condition "continued and went along and resulted in the present condition he did not know," but it could be a contributing cause. The witness could not say that the condition "was not a true exfoliativa," but even if it were, he was not satisfied that the condition was not due to the employee's work; he "has had actual clinical experience with a case of this kind where there was external irritation." From January 17, 1936, to March 13 of that year, while under the treatment of this witness, when the employee absented himself from his work, he would improve, but returning for a day or two his condition would become worse.

The other specialist, who treated the employee from March 27, 1936, testified that, when he first saw him, his condition had developed into an exfoliating dermatitis, but

was not a true dermatitis exfoliativa, and gave his opinion that it was a contact dermatitis. He believed that the employee's condition was "due to some chemicals at his work" and that the "constant exposure had then laid the basis for or was the cause of this dermatitis."

The burden was on the employee to prove that "the trouble from which he suffered was the result of an injury which was due to his work and arose out of it." *Perangelo's Case,* 277 Mass. 59, 62.

While the case is close, we think that the evidence goes further than merely to show that it was "possible, conceivable or reasonable" (*DeFilippo's Case,* 284 Mass. 531, 535) that the injury of the employee was occasioned by contact with or exposure to chemicals and dyes or their vapors in the course of his employment. "Where the relation of cause and effect between two facts has to be proved, the testimony of an expert that such relation exists . . . or probably exists . . . has been held enough." (Page 534.) In the light of the report of the impartial physician and of the testimony of the experts considered in connection with the previous freedom of the employee from the condition involved, the improvement in the condition when he absented himself from work after the inception of the injury, its progress upon his return to work, together with the evidence of actual bodily contact of the employee with the dyes and his exposure to the vapors before described, we are of opinion that it cannot be said that the board was not warranted in finding for the employee. *DeFilippo's Case,* 284 Mass. 531, 535, and cases cited. See also *Rodrigues's Case,* 296 Mass. 192; *Panagotopulos's Case,* 276 Mass. 600, 604; *Carmossino's Case,* 268 Mass. 35, 38.

*Decree affirmed.*