55 So.2d 284 (1951)
HOGAN
v.
STOVALL DRILLING CO., Inc.
No. 7666.
Court of Appeals of Louisiana, Second Circuit.
November 30, 1951.
Hewitt B. Johnson, Albin P. Lassiter, Monroe, for appellant.
Hudson, Potts, Bernstein & Davenport, Monroe, for appellee.
TALIAFERRO, Judge.
Plaintiff was injured on February 10, 1950, while performing the duties of his employment as driller with the defendant, Stovall Drilling Company, and sued to recover workmen's compensation on the basis of permanent total disability.
Defendant admits the happening of an accident on or about February 10, 1950, in which plaintiff sustained some physical injury in the course of his employment with it, but denies any causal connection between his alleged disability and said accident. Plaintiff's demand was rejected and he appealed to this Court.
At the date this suit was filed, August 15, 1950, and for some time prior, plaintiff was unquestionably wholly disabled to perform any sort of labor. He was paid compensation from date of injury to June 18th.
But one question is tendered, one of fact, and that is whether the disability, in whole or part, is a consequence of the accident.
The nature of the accident is alleged to be as follows, to-wit: As he was "preparing to make a connection of drill pipe at a drilling rig, necessitating his being near machinery propelling the drilling apparatus, the spinning chain of the rig caught in the fork of the brake lever onto which he was holding and operating, causing him to be thrown against machinery and squeezed". The specific injuries alleged to have been received by him in the accident, are:
1. Contusions and lacerations of the back;
2. Fracture of several ribs;
3. Contusion, laceration and bruise to one hand;
4. Various internal injuries of indeterminate extent, caused by the severe squeezing of his mid-body;
5. Various sprains to muscles and ligaments.
Plaintiff was carried to a sanitarium in the City of Monroe, Louisiana, immediately *285 after the accident, and was there treated by Dr. A. G. McHenry. Examination revealed an incomplete fracture of the radius of the right arm, bruises and contusions over different portions of the body, but serious injury to organs was not discovered. He was then extremely anemic, thought by Dr. McHenry to probably be attributable to malaria. He was confined to the sanitarium for eight days, but continued to be observed and treated by Dr. McHenry for eight weeks, at which time he was advised that he should resume work, and did so. Due to general body weakness he was forced to quit work at the end of ten days. The wrist wound had completely healed. He continued to see Dr. McHenry professionally, who sensed that the anemic symptoms might be super-induced by a cause more serious than malaria, and had made appropriate tests to determine if leukemia was not at the bottom of the ailment. Examination by competent pathologists of smears of substance drawn from the breast bone (sternum) disclosed existence of positive myelogenous leukemia, which was explained by Dr. W. L. Bender as follows: "He had what is known as an aleukemic stage of myelogenous leukemia, which is a condition in which the blood count is not high as contrasted to the usual type of leukemia in which the blood count is high. Myelogenous leukemia itself is a disease which we do not know a great deal about with reference to its cause. The fact is we don't know what causes it. And it is an overproduction, as a rule, of the white blood cell count, white cells in the blood, which is the result of some injury to the possible blood making system, probably from the bone marrow or the spleen or possibly from the lymph glands, we don't know; but his type was probably from the spleen or the bone marrow. There develops in the circulation an overflow or great increase of the white cells which, of course, in this case did not happen, and the diagnosis had to be made from what is known as a sternal puncture, and the cells themselves are what we speak of as immature cells, not fully developed cells; they don't go on to a full growth or normal maturity; they stop on the way up, and the largest number of them are usually myelocytes, which is a type of immature leukocyte."
The red blood count on February 10th was 2,646,000, whereas 4,000,000 is normal. The white blood count was greater than it should have been, and the hemoglobin content registered 50 per cent of normal.
It is of the nature of this progressive and fatal malady that the red blood corpuscles of the blood producing organs gradually decrease in numbers while the white ones usually increase; and the hemoglobin content declines.
Anemia invariably precedes discovery of the existence of the disease, which is not discoverable until several months, in some cases, a year or more, after its incipiency.
Dr. McHenry is certain plaintiff was affected by the disease when he first examined him on February 10th. Abnormally low red blood count, anemia and bodily weakness are strong evidences of the presence of the disease but not conclusive of the fact. The sternum is a blood forming bone and puncture of it is generally done in order to procure substance for examination by a pathologist, seeking to learn the truth.
Examinations and tests did not reveal that plaintiff's blood count had changed materially until on September 4th. It was then found to be much less than theretofore, the red blood count being 1,390,000 and the white 3,300 as against 14,000 on February 10th. The condition progressively grew worse until March 27, 1951, when he passed away, this being thirty days after judgment was rendered in the case.
All of the doctors who testified in the case agree that the cause of the blood count changes that produce leukemia is unknown to the medical profession. They know that the disease is preceded by these changes. The white corpuscles "eat up" the red ones, according to the doctors.
It is not contended that the leukemia was caused by the accident, but it is contended that it was in a passive, dormant state at the time, and was aroused and/or activated by it immediately thereafter.
Drs. McHenry and J. W. Cummins of Monroe, Louisiana, think it possible that *286 the squeezing of the body could have activated the leukemia and caused it to become active, but they admit inability to find anything in medical literature to support even the qualified opinion that trauma may activate dormant leukemia.
On the other hand, Drs. W. L. Bender and John R. Snellings of the same city, are definitely certain that the accident did not and could not have affected the leukemia already well seated in the body. This opinion is shared by Dr. S. D. Cummins of Shreveport, a pathologist, who examined the smears referred to.
The fact that the blood count underwent small change between February 10th and September 4th argues quite forcefully against the possibility of the accident having had any effect upon the leukemia.
The learned trial judge has favored us with a very lucid written opinion in the case and we have decided to adopt portions of it as a supplement to what we have said, as we entirely agree with his findings on the factual issue tendered. He says:
"Plaintiff's recovery rests on showing that the accident brought about the existence of some condition which induced, activated, aggrevated or accelerated the leukemia which was present undetected. The burden of proof even though accorded the liberality established in our jurisprudence, must be read in the light of accepted facts that the medical profession neither knows the cause of leukemia nor whether an acceleration or aggravation of the disease can be induced by external means. Little medical proof is available.

* * * * * *
"Medical testimony informs us that the progressive decline was normal and does not indicate an unusual change or disturbance.
"Realizing that the responsibility rests upon plaintiff to show some relationship between the accident and the disease counsel refers to certain sequences as proof in his favor.
"First, Hogan's work record and lay testimony shows a normal healthy man engaged in a skilled class of manual labor prior to receiving injury on February 12th.
"Second, the injury was of a crushing nature and hurt him about the chest, abdomen and back, or where injury could impair or disturb the blood forming organs of the body, that is, bone, marrow, spleen and lymph glands.
"Third, after the accident the bone marrow of the breast bone revealed the condition of leukemia, hence there is the incidence of the injury and the disease occurring together.
"Fourth, the testimony of Drs. A. G. McHenry and J. W. Cummins expresses the opinion that the trauma could have caused an aggravation of the disease.
"The record does not strengthen the argument `after the accident, therefore caused by the accident', for certain reasons:
"The evidence negatives the suggesting the injury affected the blood forming bone marrow or spleen. The physical injuries which caused bruises or soreness about the chest, abdomen and back disappeared normally, proving temporary trauma only. No injury to the sternum or spleen was found. An examining doctor would have found such injury during the eight weeks of observation. The wrist bone fracture was simple and not through the bone. Secondly, we find no departure from a normal expected deterioration of the blood from February through May, which negatives the influence from an extraneous agent. The weakness of the opinion given by the doctors (McHenry and Cummins) is its generality. They do not point out any connecting link between the accident and the result. This is essential."
We feel impelled to say, as has often been said in compensation cases, that while the law and facts should be liberally construed and weighed in favor of the injured workman, yet, it is required before judgment can be rendered for him, that he prove the grounds upon which he depends for recovery by preponderance of the evidence. Testimony adduced on behalf of plaintiff has not met this requirement. Conjecture, possibilities and/or probabilities are not sufficient.
Both sides have favored us with well written lengthy briefs in which many authorities *287 are cited and some quoted from. As the question herein is solely one of fact, adjudications in other contests, with entirely different facts, afford small aid in this case.
As said before, plaintiff died on March 27, 1951. In this Court counsel, in writing, agreed that his widow, Mrs. Ernest Jerome Hogan, in her own right and as natural tutrix of her only child, John William Hogan, minor, 14 years old, be substituted as party plaintiff.
For the reasons herein assigned, there is now judgment affirming that from which appealed, in favor of the defendant and against the substituted plaintiff, who is cast for costs.
GLADNEY, J., recused.
KENNON, J., not participating.