WARD RALPH's (dependent's) CASE.

Suffolk. December 8, 1953. — January 27, 1954.

Present: QUA, C.J., LUMMUS, WILKINS, SPALDING, & COUNIHAN, JJ.

*Workmen's Compensation Act,* Injuries to which act applies. *Proximate Cause.*

In a workmen's compensation case involving an employee who died of tuberculosis first manifesting itself about two years after he had ceased to work for the employer, a conclusion by the Industrial Accident Board that the employee's death was the result of an injury arising out of and in the course of his employment through exposure to dust in his work which "either lighted up or aggravated a tuberculosis condition" was erroneous, and a claim for dependency compensation must be dismissed, where there was no evidence that he had tuberculosis during his employment.

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board under the workmen's compensation act.

The case was heard by *Nagle, J.*

*James C. Gahan, Jr.,* (*Edward J. Duffy, Jr.,* with him,) for the insurer.

*Charles L. Donahue,* for the claimant.

SPALDING, J. This case began as a claim for compensation by the employee, Ward Ralph. Hearings were completed before a single member but before a decision was rendered the employee died. His widow then brought this claim for dependency compensation under G. L. (Ter. Ed.) c. 152, § 31. At the hearing on this claim the record in the prior proceedings was made part of the present record by agreement. Additional evidence was also introduced. The single member found in favor of the claimant and his decision was affirmed by a majority of the reviewing board. From a decree of the Superior Court entered in accordance with the board's decision, the insurer appealed.

Facts found by the single member and those not in dispute are these. On October 7, 1951, the employee, aged sixty-four years, died at the Rutland State Sanatorium where he had been a patient since the late fall of 1950. The cause of death stated in the death certificate was "Tuberculosis of lungs." Down to 1939 and for over thirty years prior thereto the employee had worked in granite quarries, and during part of that time had been employed as a stonecutter. From 1939 to 1947 he did farm work. On August 12, 1947, he entered the employ of the American Sugar Refining Company (the employer here) and worked for it until March 29, 1948, when he went out on strike. His work during this period consisted of placing two-wheeled pushcarts under spouts through which sugar would come down from two floors above. While the pushcarts were being filled he would level out the sugar, and when filled he would transport them into another room. As the sugar fell into the pushcarts there "would be a cloud of dust and it would come up and strike . . . [the employee] in the

face." At the time when his employment began "he had silicosis to a marked degree." While the employee was out on strike he contracted pneumonia for which, on several occasions during the month of May, 1948, he was treated at a hospital. On August 12, 1948, he resumed working for the employer and this employment lasted until October 8, 1948, when he left. He never worked thereafter. At the time he quit work he was obliged to do so because of shortness of breath and "coughing spells." Thereafter until his death the employee was examined and treated for chest and pulmonary ailments on numerous occasions at various hospitals.

The following findings of the single member are especially pertinent: "Upon all the evidence, I am satisfied that in the course of his employment the . . . [employee] was exposed to sugar dust, at times in large quantities. I am also satisfied that the amount and quantity of sugar dust that he was exposed to would not have been harmful to any employee in reasonably good health. This condition, however, did not apply to the . . . [employee]. At the time he entered the contract of employment with his employer he had silicosis to a marked degree and *in all probability he also had tuberculosis*. . . . I am adopting the opinion of . . . [the employee's medical expert] to the effect that the sugar dust acted as an irritant to him and . . . caused him to have a chronic cough which aggravated his preëxisting silicosis and *either lighted up a quiescent tuberculosis to the extent that it became active or aggravated an already active tuberculosis*. . . . I find that the employee sustained an injury that arose out of and in the course of his employment . . . [by reason] of the conditions existing at his work . . . which were harmful to him, [and which] aggravated a preëxisting silicosis and *either lighted up or aggravated a tuberculosis condition so that the injury resulted in his death on October 7, 1951*" (emphasis supplied). The reviewing board affirmed and adopted the findings of the single member without modification, and made no additional findings. See *Di Clavio's Case*, 293 Mass. 259, 261.

The insurer attacks the decision on several grounds but

we need discuss only one of them as we think it is decisive of the case. As pointed out above, the board in its findings stated that the employee in all probability had tuberculosis at the time he was working for the employer. The board then concluded that the chronic cough caused by the sugar dust "aggravated . . . [the employee's] preëxisting silicosis and either lighted up a quiescent tuberculosis to the extent that it became active or aggravated an already active tuberculosis." The insurer contends that the evidence affords no basis for the finding that the employee had tuberculosis during his employment. We think that this contention must be sustained. The only possible basis in the record for the challenged finding is in the testimony of Dr. Rattigan, a physician called by the employee.[1] At one point he stated that the cough caused by the sugar dust aggravated "not only the silicosis but probably the pulmonary tuberculosis." But just prior to this testimony he had stated that he would not be able to determine "the time of onset of the pulmonary tuberculosis." Later in his examination he was asked the following question by counsel for the insurer: "Is it your opinion that . . . [the employee's working conditions] aggravated . . . [the employee's] silicotic condition so that . . . [he] came down with tuberculosis?" His answer was, "No, I think that it is possible that it did but I don't know any way of determining whether he had a latent tuberculosis focus which was lit up by the cough he had or reinfectious type of tuberculosis due to some exogenous source of tubercular bacilli." Again, after being shown several hospital records, Dr. Rattigan testified that "There is nothing either objective or subjective in any of the medical records that indicates to him the man was suffering from an active tubercular condition until October, 1950,[2] that would be the first

---

[1] Dr. Rattigan had examined the employee in December, 1950, slightly more than two years after he had ceased working for the employer.

[2] The first time that a diagnosis of tuberculosis appeared in any of the hospital records, or elsewhere in the evidence, was in the record arising out of the employee's fifth admission to the Boston City Hospital on October 26, 1950. An earlier examination of the employee in the early spring of 1949 while he was a patient in the Rutland State Sanatorium disclosed that he was free from tubercular symptoms.

manifestation of it. Now as to the time of onset of the disease it is speculative."

We think that Dr. Rattigan's testimony when properly analyzed makes it plain that he was unable to state when the onset of tuberculosis, latent or active, occurred. At best his testimony that the cough aggravated "probably the pulmonary tuberculosis" was no more than a guess and must be put out of the case. *Ruschetti's Case*, 299 Mass. 426, 431–432. *Brownhill* v. *Kivlin*, 317 Mass. 168, 170. *Nass* v. *Duxbury*, 327 Mass. 396, 401–402. There was no other evidence in the record that would support the finding that the employee probably had tuberculosis during the periods of his employment. The time of the onset of this disease was clearly not a matter which the board could determine from its own knowledge; it was a matter calling for the opinion of a medical expert. In view of the fact that the cause of the employee's death was tuberculosis the erroneous findings of the board concerning this disease and the conclusion based on it were obviously prejudicial and vitiated its decision.

The decree is reversed and a decree is to be entered dismissing the claimant's claim for dependency compensation.

*So ordered.*