RALPH McEWEN'S CASE.

Suffolk.    December 11, 1973. — March 21, 1974.

Present: HALE, C.J., ROSE, KEVILLE, GRANT, & ARMSTRONG, JJ.

*Workmen's Compensation Act,* Incapacity.    *Evidence,* Opinion: expert.

In a workmen's compensation case, where the Industrial Accident Board denied a claim by the employee for permanent and total incapacity compensation under G. L. c. 152, § 34A, on the ground that he had failed to prove such incapacity, but expressly reserved his rights subsequent to a specified date, and shortly after such decision the employee made a new claim for like compensation from the specified date, the evidence did not warrant a finding that the employee's condition had changed between such date and the hearing on the new claim, and the new claim must be denied.    [64-66]

An expert's opinion must be disregarded when it is no more than mere speculation or a guess from subordinate facts which do not support the conclusion reached.    [66-68]

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board under the Workmen's Compensation Act.

The case was heard by *Abrams, J.*

*Timothy H. Donohue* for the insurer.

*Joseph K. Kelley* for the employee.

ROSE, J.    This case arises under the Massachusetts Workmen's Compensation Act and is before this court on an appeal by the insurer from a Superior Court decree which awarded the employee total and permanent incapacity and dependency compensation dating from April 17, 1970.    The Superior Court decree was in conformity with the decision of the reviewing board (board), which had affirmed and adopted as its own the

findings and decision of the single member. We must therefore look to the single member's decision to determine whether the action of the board was correct. *Haley's Case*, 356 Mass. 678, 679-680 (1970). *Russo's Case*, 1 Mass. App. Ct. 206 (1973).

The employee's injury has been the subject of several proceedings before the Industrial Accident Board. As those proceedings are relevant to a consideration of the issues in this case, we proceed to summarize them. On March 24, 1961, while working as a mechanic, the employee injured his right hand. Although the employee recovered from the physical effects of his accident, he remained unable to work because of feelings of "light-headedness, dizziness and weakness of his legs." His condition was diagnosed in 1962 as a "[p]sychoneurosis-anxiety reaction. stress: severe; fear of reinjury at work." The employee received total incapacity and dependency compensation from 1961 until 1965. In September, 1965, a single member found the employee capable of performing work and authorized the insurer to discontinue compensation. This decision was modified by the board, which found the employee partially incapacitated as of that date and awarded him compensation. In September, 1968, the statutory limit on total and partial incapacity compensation was reached[1], and the payments to the employee were discontinued.

At some date subsequent to April 1, 1966, the employee initiated a further proceeding in which he claimed total incapacity compensation dating from April 1, 1966, and permanent and total incapacity compensation from September, 1968, when his partial

---

[1]G. L. c. 152, §§ 34, 35 (as amended through St. 1959, c. 566, §§ 1, 3).

incapacity payments had been discontinued.[2]   The single member, however, ruled that the employee had failed to sustain his burden of proof and dismissed the claim. This decision was affirmed and adopted by the board. Both the single member and the board explicitly reserved the employee's rights subsequent to the date of the final hearing in the proceeding (April 17, 1970).

Approximately two weeks after the board rendered its decision denying the employee's claims for the 1966-1970 period, the employee initiated a new proceeding, on this occasion requesting total and permanent incapacity compensation dating from April 17, 1970.  His claim was allowed by the single member on May 30, 1972, in a decision which was subsequently adopted and affirmed by the board.

It is the contention of the insurer that the single member's 1972 finding of total and permanent incapacity was erroneous as a matter of law (*Hachadourian's Case,* 340 Mass. 81, 85 [1959]; *Sutherland's Case, ante,* 58 [1974]),[3] as there was no evidence to indicate that the employee's condition had changed since 1970, when, as was found, he was *not* permanently and totally incapacitated.   The insurer relies principally upon *Foley's Case,* 358 Mass. 230 (1970), in which a board finding of total and permanent incapacity was reversed.   The court made comments as follows (at page 232):  "Our review of the transcript of the testimony at the 1964 hearing

---

[2] The employee's claim to total incapacity compensation was filed pursuant to G.L. c. 152, § 34 (as amended through St. 1959, c. 566, § 1).  His claim to permanent and total incapacity compensation was filed pursuant to G.L. c. 152, § 34A (as amended through St. 1959, c. 566, § 2).

[3] The insurer also argues that a psychoneurosis such as was diagnosed in the present case cannot serve as the basis for a claim under G.L. c. 152, § 34A.  In light of the view we take of this case we find it unnecessary to decide this question.

leads us to conclude that it does not support the single member's finding that the employee is 'totally disabled within the intent and meaning of § 34A of the Act.' Since the employee had been found in 1960 to be only partially incapacitated the burden in the 1964 proceedings was upon him to prove he was now totally incapacitated as a result of his accident. *Davis's Case,* 304 Mass. 530, 534 [1939]. *Hummer's Case,* 317 Mass. 617, 622 [1945]. We find no evidence to indicate any change in the employee's condition from 1960 to 1964 not due to advancing age."

The only evidence of a change in the present employee's condition between 1970 and 1972 was his testimony and the testimony of one Dr. Rizzo, a physician called by him. The employee testified that his "condition" subsequent to April, 1970, was " [n]ot the same. Maybe just slightly worse at times," but said that his "symptoms" were the same in 1972 as they had been four years earlier. These comments were at best speculative and perhaps contradictory; hence they must be disregarded. *Perangelo's Case,* 277 Mass. 59, 65 (1931). *Johnson's Case,* 278 Mass. 365, 368 (1932). *Sevigny's Case,* 337 Mass. 747, 749-750 (1958).

Dr. Rizzo's testimony on the issue of change in condition was equally insubstantial. Asked whether the employee had given him any indication that his condition had worsened in the last two or three years the witness answered, "A hint of it . . . He expresses discouragement, low morale and feelings of not being much good." This testimony must also be disregarded as speculative, especially in light of other testimony by the same witness that the employee's "feelings are similar to what they were following the accident and only made worse because it is now eleven years later." Dr. Rizzo was also asked whether the employee's medical history indicated a change of condition since his accident in 1961. He replied, "It got progressively worse; eleven years have elapsed. That makes a big difference." To the extent

that this opinion was relied upon by the single member, it must be noted that it is in express contradiction of the findings, in earlier proceedings, that the employee was totally disabled from 1961 to 1965, but only partially disabled as of September, 1965. It is also apparent from reported testimony and from documents incorporated in the record of this case that Dr. Rizzo, who cited findings by an impartial examiner and two other psychiatrists in support of his opinion, seriously misread the findings of those experts.[4] This serves further to undermine the adequacy of his testimony. "[A]n opinion given by an expert will be disregarded where it amounts to no more than mere speculation or a guess from subordinate facts that do not give adequate support to the conclusion reached." *Sevigny's Case,* 337 Mass. 747, 751 (1958). *Lynch* v. *Egbert,* 360 Mass. 90, 92 (1971).

We conclude that the above summarized testimony does not constitute evidence of a change in the employee's condition between April 17, 1970, the date of the final evidentiary hearing concerning his previous claim, and May 18, 1972, the date on which evidence was heard in the present case. As there was no other evidence to

---

[4] Dr. Rizzo stated in a medical report incorporated in the record that: "One impartial examiner [Dr. Charles Benedetti] saw the claimant four times in consultation and each time he reported Mr. McEwen to be totally and permanently disabled. The examinations conducted by Drs. Maxwell MacDonald and Leo Alexander yielded essentially the same findings." The impartial examiner in fact reported on February 7, 1966, that the employee was "capable of some type of work." On May 21, 1968, the same examiner gave an opinion that "in his present state" the employee was "unemployable" but that "this condition need not lead to a permanent and total disability." Dr. MacDonald reported on April 3, 1963, that the employee was then totally disabled but "should recover and return to work with proper handling." In the course of the April, 1970, hearing Dr. Alexander testified that in 1969 he had diagnosed the employee as suffering from "depression with phobic features"; however, he suggested intensive treatment, a recommendation inconsistent with the diagnosis imputed to him by Dr. Rizzo.

support the single member's finding of total and permanent incapacity, his and the board's decisions were erroneous as a matter of law.

The decree entered by the Superior Court is reversed and a new decree is to be entered denying compensation for the period from April 17, 1970.

*So ordered.*