DOROTHY F. SWEENEY'S CASE.

Suffolk.    April 14, 1975. — May 20, 1975.

Present: HALE, C.J., GRANT, & ARMSTRONG, JJ.

*Proximate Cause.    Evidence,* Opinion: expert.

Testimony of a doctor who had examined an employee in a workman's compensation case warranted findings by the Industrial Accident Board that there was a causal relationship between injuries suffered by the employee in a fall at her place of employment and her subsequent loss of equilibrium which resulted in total disability, although the doctor's testimony was based in part on the history he received from the claimant including her statement that before the fall she had no problem with her equilibrium. [285-287]

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board under the Workmen's Compensation Act.

The case was heard by *Ronan, J.*

*Thomas A. L'Esperance, Jr.,* for the insurer.

*Marvin A. Stern* for the claimant.

HALE, C. J.    The insurer in this claim for compensation under G. L. c. 152 has appealed from a judgment of the Superior Court awarding compensation to Dorothy F. Sweeney (the claimant) in accordance with a decision of the reviewing board of the Industrial Accident Board, which had adopted the findings of the single member in its decision.

The sole issue presented by this appeal is whether the

claimant has satisfied her burden of establishing through competent medical evidence that her present disability is causally related to an admitted industrial injury which occurred on September 23, 1965. See *Sevigny's Case*, 337 Mass. 747, 749 (1958). There was evidence of the following.

While at work on September 23, 1965, the claimant fell while ascending a flight of stairs. She struck her left arm on the metal edging strip of a stair and fractured the arm. The fracture was reduced surgically and an intramedullary pin inserted. On February 10, 1966, while descending the stairs in her home she became dizzy. Because of weakness in her previously broken left arm, she was unable to hold on to the stair railing and fell. Her left arm was again fractured. She returned to work on July 28, 1966. The insurer paid compensation for the disability arising out of each of the two accidents and for a period of time early in 1967, when a pin inserted in the course of treatment of the second fracture was removed.

While at home on May 30, 1968, the claimant lost her balance getting out of a bathtub and fell, breaking her right upper arm. She then decided to stop working because of her instability in walking. Her fourth fall occurred in the hall of her home in September of 1971, when she fractured her left arm and hip.

The claimant testified that prior to the first (1965) injury she had no problem with her equilibrium and first noticed the problem "right after" that incident.

She relied on the expert medical testimony (*Sevigny's Case*, 337 Mass. 747, 749 [1958]; *Oberlander's Case*, 348 Mass. 1, 5 [1964]) of Dr. Maxwell MacDonald, a neurologist, to establish a causal relationship between the 1965 injury and her subsequent disability. Dr. MacDonald's opinion was based on the history which he himself received from the claimant, his examination of X-rays taken at his request, and a study of all of the claimant's hospitalization records (all of which were in evidence and are now before us). He testified that in his opinion the claimant had not only fractured her left upper arm but had also injured her cervical spine in the fall. In arriving at this opinion he

assumed that the claimant's disclaimer of any prior insta-
bility was true and took into account the nature of the first
fall. Although he conceded that such a fall would not neces-
sarily cause spinal injury, he was of the opinion that it had
done so in the claimant's case in view of the immediately
ensuing neurological symptoms. In his opinion the spinal
injury resulted in pressure to, or organic involvement of,
the high cervical spinal cord, precipitating secondarily the
disturbance of the claimant's equilibrium and her insta-
bility in walking. Dr. MacDonald was of the further opinion
that that instability resulted in the subsequent falls.

The single member adopted the opinions of Dr. Mac-
Donald and rejected those of the insurer's medical witness.
Having done that, and having considered the other evidence
before him, the single member found that "the employee
has been totally disabled from work from May 31, 1968 to
the present time and continuing; that said total disability
is directly related to the injury she sustained during and
in the course of her employment on September 23, 1965."

The insurer's attack on this finding is directed to the
member's reliance on Dr. MacDonald's opinion which, it
argues, was based on speculation and assumptions not es-
tablished by the evidence instead of on proven facts and
the warrantable inferences that might be drawn therefrom.
It grounds its argument on such cases as *Ruschetti's Case*,
299 Mass. 426, 431 (1938) ("a mere guess or conjecture by
an expert witness in the form of a conclusion from basic
facts that do not tend towards that conclusion any more
than towards a contrary one has no evidential value"),
*Sevigny's Case*, 337 Mass. 747, 751 (1958) (facts gratui-
tously assumed are insufficient to form the basis of a rea-
sonable opinion), *State Bd. of Retirement* v. *Contributory
Retirement Appeal Bd.* 342 Mass. 58, 65-66 (1961) (opin-
ions based on assumptions not established in evidence are
entitled to no weight), and *Oberlander's Case*, 348 Mass.
1, 6-7 (1964) (an opinion which rests on no more than
possibilities is not entitled to probative value).

We recognize the limitations governing our review of the
board's decision, namely, that the findings and decision of

the board are to be sustained wherever possible and that they are not to be reversed unless they are wholly lacking in evidentiary support or are tainted by errors of law. *Chapman's Case,* 321 Mass. 705, 707 (1947). *Brek's Case,* 335 Mass. 144, 147 (1956). *Cummings's Case,* 2 Mass. App. Ct. 849 (1974). "It is not for us to determine whether the opinion of the doctor was medically sound. . . . Its probative value was for the fact finding tribunal to decide." *Murphy's Case,* 328 Mass. 301, 304 (1952). We have reviewed the evidence before the board and conclude that the hypotheses accepted by Dr. MacDonald are supported by the evidence (including the testimony of the claimant) and that his opinions, which were firmly stated, were not based on speculation or guess but were grounded on the facts, the existence of which, having been found specifically, or by necessary implication, by the single member and the reviewing board, will not be disturbed by us. *Wax's Case,* 357 Mass. 599, 601-602 (1970). See generally Locke, Workmen's Compensation, § 521 (1968). The principles of the cases relied on by the insurer, though unquestionably valid, are inapposite here.

> *Judgment affirmed.*
> *Costs of appeal are to*
> *be determined by a*
> *single justice of this court.*